1 │ Erwin J. Shustak [CBN 119152]
   │ Thomas C. Frost [CBN 185187]
2 │ Jonah A. Toleno [CBN 209600]
   │ jtoleno@shufirm.com
3 │ Robert L. Hill [CBN 241624]
   │ rhill@shufirm.com
4 │ SHUSTAK & PARTNERS, P.C.
   │ 401 West "A" Street, Suite 2330
5 │ San Diego, CA 92101
   │ Telephone: (619) 696-9500
6 │ Facsimile: (619) 615-5290

7 │ Attorneys for Petitioner
   │ DENISE R. REED
8

9 │ UNITED STATES DISTRICT COURT

10 │ NORTHERN DISTRICT OF CALIFORNIA

11

12 │ DENISE R. REED,                          ) Case No. 4:07-CV-03648-CW
                                              )
13 │        Petitioner,                       )
                                              )
14 │ vs.                                      ) DECLARATION OF JONAH A. TOLENO
                                              ) IN SUPPORT OF DENISE R. REED'S
15 │ NATIONAL ASSOCIATION OF                  ) FIRST (1st) AMENDED PETITION TO
     │ SECURITIES DEALERS, INC., WHITE        ) CONFIRM ARBITRATION AWARD
16 │ PACIFIC SECURITIES, INC.                 )
     │ and ROY L. PANELLI,                    )
17 │                                          )
     │        Respondents.                    )
18 │                                          )
                                              )
19

20

21 │        JONAH A. TOLENO, an attorney at law admitted to practice before the State and Federal

22 │ Courts of California, affirms the following to be true under penalty of perjury.

23 │        1. I am a partner with Shustak & Partners, P.C., counsel of record herein for Petitioner

24 │ DENISE R. REED ("Reed"). I make this Declaration in support of Reed's concurrently filed

25 │ First (1st) Amended Petition to Confirm Arbitration Award.

26 │        2. Reed filed her initial Statement of Claim against Respondents WHITE PACIFIC

27 │ SECURITIES, INC. ("White Pacific") and ROY L. PANELLI ("Panelli") with the National

28 │ Association of Securities Dealers ("NASD") in NASD Case No. 04-03449 on May 4, 2004, and

1

Panelli had inaccurately reported certain events on her Forms U-4 and U-5 filed with the Central Registration Depository ("CRD"). Reed sought expungement of these inaccurate reportings on her Forms U-4 and U-5, and she alleged causes of action for defamation, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.

3.  The arbitration hearing took place in San Francisco, California, on April 16-18, 2007, before three arbitrators: Sheldon Michaels, Esq., Barbara M. Anscher, Esq., and Jane F. Gundermann (the "Panel"). My law firm, Shustak & Partners, represented Reed at the arbitration.

4.  The NASD duly served the Panel's award ("Arbitration Award") on the parties on June 5, 2007. The Panel found Reed to be the prevailing party and granted her request for expungement of the inaccuracies on her U-4, U-5 and her CRD records. A true and correct copy of the Arbitration Award is marked and attached hereto as Exhibit "A".

5.  Of the seven occurrences on Reed's U-4, U-5 and CRD records for which Reed sought amendment, the panel recommended (a) expungement of five of the occurrences (occurrences "a" - "e" as referenced on the Arbitration Award) on the basis that they were "clearly erroneous", and (b) expungement of two of the occurrences (occurrences "f" and "g" as referenced on the Arbitration Award) on the basis that they were "defamatory". (Ex. A, pp. 4-5.)

6.  The Panel assessed against White Pacific the following amounts, to be paid to Reed: **$158,797.10** for attorneys' fees, **$5,228.70** for costs and expenses, and **$375.00** for filing fees, totaling **$164,400.80**. The Panel did not find Panelli personally liable for any of these amounts, although the Panel did deny Panelli's request for expungement of his own CRD records. (Ex. A, p.5.)

7.  Pursuant to Section 10330(h) of the NASD Code of Arbitration for claims filed before April 16, 2007, White Pacific's payment of the Arbitration Award amount was due on July 5, 2007. In a letter to the NASD dated July 5, 2007, White Pacific stated that it had mailed to Reed's counsel a check for $5,603.70 to cover the amounts awarded by the Panel for Reed's costs, expenses and filing fees. However, White Pacific failed to pay – and continues to fail to pay – the $158,797.10 in attorneys' fees ordered by the Panel and instead stated that it had

2

1    pay – the $158,797.10 in attorneys' fees ordered by the Panel and instead stated that it had

2    deposited $158,797.10 into an escrow account. A true and correct copy of White Pacific's letter

3    to NASD Dispute Resolution dated July 5, 2007, is marked and attached hereto as Exhibit "B".

4          8.  None of the respondents have filed a motion to vacate, correct or otherwise modify

5    the Arbitration Award before a court of competent jurisdiction.

6          9.  Pursuant to the Independent Contractor Agreement between Reed and White Pacific,

7    Reed is entitled to her reasonable attorneys' fees and costs incurred in the enforcement of her

8    rights as the prevailing party, including the filing of this petition. A true and correct copy of the

9    Independent Contractor Agreement is marked and attached hereto, as Exhibit "C".

10

11          I declare under penalty of perjury that the foregoing is true and correct and that this

12    Declaration was made in San Diego, California, this 24th day of July, 2007.

13

14                            By: s/Jonah A. Toleno

15                                Attorney for Petitioner
16                                Email: jtoleno@shufirm.com

17

18

19

20

21

22

23

24

25

26

27

28

3

Declaration of Jonah A. Toleno                                    4:07-CV-03648-CW

# Exhibit A

05/05/2007 18:18 FAX

Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Denise R. Reed, Claimant v. White Pacific Securities, Inc. and Roy L. Panelli, Respondents

Case Number: 04-03449                      Hearing Site: San Francisco, California

Nature of the Dispute:  Associated Person vs. Member and Associated Person

## REPRESENTATION OF PARTIES

For Claimant:

Thomas C. Frost, Esq.
Shustak & Partners
San Diego, California

For Respondents:

Michael Bolgatz, Esq.
Berkeley, California

## CASE INFORMATION

Statement of Claim filed:  May 4, 2004

First Amended Statement of Claim filed:  January 12, 2007

Claimant's Arbitration Brief filed on or about:  April 9, 2007

Claimant's Uniform Submission Agreement filed:  June 28, 2004

Statement of Answer of Respondents White Pacific Securities, Inc. ("White Pacific") and Roy L. Panelli filed:  March 18, 2005

Respondents' Answer to the First Amended Statement of Claim filed:  March 2, 2007

Respondents' Arbitration Brief filed:  none

## CASE SUMMARY

In her Amended Statement of Claim, Denise R. Reed ("Claimant") alleged that White Pacific Securities, Inc. and Roy L. Panelli ("Respondents") breached the terms of their Independent Contractor Agreement and the implied covenant of good faith and fair dealing.  Claimant also alleged that Respondents defamed her and were negligent.

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 2 of 8

The claims involved the reporting of several events concerning Claimant to the Central
Registration Depository ("CRD").

Respondents denied Ms. Reed's allegations of wrongdoing and denied any liability to
her.

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested:
1. Damages in the amount of $500,000.00; and
2. Punitive damages in the amount of $500,000.00.

In the First Amended Statement of Claim, Claimant requested:
1. Unspecified compensatory damages;
2. An Award directing NASD Regulation to properly expunge and amend Ms. Reed's CRD record, in accordance with the evidence presented at the hearing; and
3. Attorney fees, expenses and costs.

In the Answer, Respondents requested:
1. Claimant take nothing by virtue of her Statement of Claim;
2. The claim be dismissed with prejudice; and
3. They be awarded arbitration fees, expenses, and reasonable attorneys' fees incurred in defending this action.

In the Answer to the First Amended Statement of Claim, Respondents requested:
1. Dismissal of Claimant's Claim in its entirety;
2. That Respondent Panelli's CRD record should be ordered expunged; and
3. That all fees and costs should be awarded against Claimant.

## OTHER ISSUES CONSIDERED AND DECIDED

Respondents did not file with NASD Dispute Resolution ("NASD-DR") properly executed
submissions to arbitration but are required to submit to arbitration pursuant to the
NASD Code of Arbitration Procedure ("the Code") and, having answered Claimant's
Claim, appeared and testified at the hearing, are bound by the determination of the
Panel on all issues submitted.

On December 16, 2004, Claimant and Claimant's counsel signed a Waiver Agreement
expressly waiving any and all rights and benefits under California Civil Code Section
1542 and the California Ethical Standards for Neutral Arbitrators.

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 3 of 8

Pursuant to the Code of Arbitration Procedure IM-10100 the waiver of the Claimant shall constitute and operate as a waiver for all member firms and associated persons (including terminated or otherwise inactive member firms or associated persons) against whom the Claim has been filed.

On January 22, 2005, Claimant filed a Motion for Consideration of Remedial Action Against Respondents in Accordance with NASD Code Rule 10314(b)(2)(C) requesting that Respondents be barred from presenting any matter, arguments, or defenses at the hearing.  The Panel denied the Motion.

During the pre-hearing telephonic conference held on December 5, 2006, the Panel permitted Claimant to file an Amended Claim.

On April 16, 2007, Respondents moved to Dismiss Claimant's claims based upon the defenses of absolute privilege and release of claims.  The Panel denied the Motion.

The parties agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## FINDINGS AND CONCLUSIONS

### Liability

1.    Respondents' White Pacific Securities, Inc.'s and Roy L. Panelli's maintenance of Claimant's CRD record was negligent.  All other claims against Respondent Roy L. Panelli are denied and dismissed.  Further references to "Respondent" shall refer only to White Pacific Securities, Inc.

2.    Respondent breached its duties implied in the Independent Contractor Agreement to accurately report and maintain Claimant's CRD system records.

3.    Respondent did not breach the implied covenant of good faith and fair dealing.

4.    Respondent's U-5 filing reporting that Claimant was convicted of a crime was defamatory.  However, the communication of that defamatory filing was privileged.

### Damages

1.    Claimant's proffered evidence of damages was speculative, remote and insufficient to support an award of damages in this case.

2.    Claimant is the prevailing party in this arbitration.

06/05/2007 16:20 FAX     ☒ 008/015

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 4 of 8

## AWARD

After considering the pleadings, testimony, and evidence presented at the hearing, and the post-hearing submissions, the Panel decided in full and final resolution of the issues submitted for determination as follows:

1.     Claimant's request for compensatory damages is denied.

2.     Claimant's request for punitive damages is denied.

3.     Claimant's request for expungement is granted. Accordingly, the Panel recommends the Expungement of the following disclosures on Claimant's U-4, U-5 and CRD records based upon the accompanying affirmative findings of fact, with the understanding that pursuant to NASD Notice to Members 04-16, and except for the defamatory findings in ¶¶ f and g below, Claimant must obtain confirmation from a court of competent jurisdiction before the CRD will execute the Expungement directive:

a.  Occurrence 597302, CRD System Report as of 04/04/2007 at p. 19: This is a criminal disclosure reported on Claimant's U-4 form regarding felony vandalism and aggravated assault charges. The occurrence stems from an affirmative response to Question 23A.(1)(b) on Claimant's Form U-4. Both charges have been dismissed by the Tennessee State Court on April 16, 2001. The Panel finds that based upon the May 22, 2007 Tennessee Court Order of Expungement, and pursuant to NASD Rule 2130(3), the information is clearly erroneous as stipulated by the Parties.

b.  Occurrence 1187925, CRD System Report as of 04/04/2007 at p. 20: This is an internal review disclosure reported on Claimant's U-5 form based on a customer complaint alleging unacceptable conduct. This occurrence stems from an affirmative response to Question 7E.3.(b) on Claimant's U-5 form. The Panel finds pursuant to NASD Rule 2130(3) that the information is clearly erroneous as stipulated by the Parties because the complaint was not customer-initiated and was not investment-related.

c.  Occurrence 1154636, CRD System Report as of 04/04/2007 at p. 22: This is a customer complaint disclosure reported on Claimant's U-4 form in response to Question 14I.(3)(a) related to the same circumstances set forth in ¶ b above. The Panel finds pursuant to NASD Rule 2130(3) that the information is clearly erroneous as stipulated by the Parties.

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 5 of 8

d. Occurrence 1187922, CRD System Report as of 04/04/2007 at p. 26: This is a regulatory action disclosure reported on Claimant's U-5 form initiated by NASD regarding fraud. The Panel finds pursuant to NASD Rule 2130(3) that the information was not securities related and is clearly erroneous as stipulated by the Parties.

e. Occurrence 1187923, CRD System Report as of 04/04/2007 at p. 26: This is an investigation disclosure reported on Claimant's U-5 form related to the circumstances referred to in ¶¶ f and g below. The Panel finds pursuant to NASD Rule 2130(3) that the information was resolved at civil trial in Nevada and is clearly erroneous as stipulated by the Parties.

f. Occurrence 1186065, CRD System Report as of 04/04/2007 at p. 24: This is a criminal conviction and misdemeanor fraud disclosure erroneously reported on Claimant's U-4 form in response to Question 14B.(1)(e). The Panel finds this occurrence to have been a civil matter that was not investment or securities related and that the information in the CRD system is defamatory.

g. Occurrence 1187926, CRD System Report as of 04/04/2007 at p. 27: The Panel finds this occurrence to have been a civil matter and that the information in the CRD system is defamatory. This is a termination disclosure reported in response to Questions 7A, 7B, 7C.3, 7D, 7E.1.3, 7E.3 and 7F.1 and 2. on Claimant's U-5 form erroneously alleging that Claimant was terminated based on a misdemeanor-criminal fraud conviction. The Panel finds this occurrence to have been a civil matter and that the information in the CRD system is defamatory.

4.     Claimant's request for attorney fees and other costs and expenses is granted pursuant to the terms and conditions of the Independent Contractor Agreement as follows:

a. Attorney's fees in the amount of $158,797.10 are awarded to Claimant assessed against Respondent White Pacific Securities, Inc.

b. Costs and expenses in the amount of $5,228.70 are awarded to Claimant assessed against Respondent White Pacific Securities, Inc.

5.     Respondent White Pacific Securities, Inc. is liable to and shall pay Claimant the sum of $375.00 as reimbursement for Claimant's filing fee.

6.     Respondent Roy L. Panelli's request that the above-captioned arbitration be expunged from his CRD record is denied.

7.     All other relief requested and not expressly granted is denied.

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 6 of 8

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
NASD-DR received or will collect the non-refundable filing fees for each claim as follows:

| | |
|---|---|
| Initial claim filing fee | = $375.00 |

### Member Fees
Member fees are assessed to each member firm that is either a party in the matter or an employer of a respondent associated person at the time of the events that gave rise to the dispute, claim, or controversy.  Accordingly, White Pacific is a party and the following fees are assessed:

| | |
|---|---|
| Member Surcharge | = $2,250.00 |
| Pre-Hearing Process Fee | = $ 750.00 |
| Hearing Process Fee | = $4,000.00 |
| Total Member Fees | = $7,000.00 |

### Adjournment Fees
The following adjournment fees are assessed:

The Panel granted Claimant's request to postpone the September 6-8, 2005, hearing dates and assessed the $1,200.00 postponement fee to Claimant.

The Parties agreed to postpone the May 22-24, 2006, hearing dates in order to mediate their dispute through NASD-DR.  Pursuant to Rule 10403(b) of the Code, NASD-DR waived the postponement fee.

### Forum Fees and Assessments
The Panel assessed forum fees for each session conducted or each decision rendered on a discovery-related motion on the papers.  A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | |
|---|---|---|
| (2) Decisions on discovery-related motions on the papers with a single arbitrator @ $200.00 per decision<br>Respondents submitted two discovery-related motions | = | $400.00 |
| (1) Pre-hearing conference session with a single arbitrator @ $450.00/session<br>Pre-hearing conference:    April 13, 2007            1 session | = | $450.00 |

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 7 of 8

| | | | | |
|---|---|---|---|---|
| (2) Pre-hearing conference sessions with the Panel @ $1,200.00/session | | | = | $2,400.00 |
| Pre-hearing conferences: | February 16, 2005 | 1 session | | |
| | December 5, 2006 | 1 session | | |
| (6) Hearing sessions @ $1,000.00/session | | | = | $6,000.00 |
| Hearing Dates: | April 16, 2007 | 2 sessions | | |
| | April 17, 2007 | 2 sessions | | |
| | April 18, 2007 | 2 sessions | | |

| | | |
|---|---|---|
| **Total Forum Fees** | = | **$9,250.00** |

The Panel assessed $100.00 of the forum fees to Claimant Denise R. Reed in connection with the Chairperson's decision of March 28, 2006, regarding a discovery-related motion.

The Panel assessed $9,150.00 of the forum fees to Respondent White Pacific.

### Fee Summary

1. Claimant Denise R. Reed is charged with the following fees and costs:

| | | |
|---|---|---|
| Initial Filing Fee | = $ | 375.00 |
| Adjournment Fee | = $ | 1,200.00 |
| Forum Fees | = $ | 100.00 |
| Total Fees | = $ | 1,675.00 |
| Less Payments | = $( | 2,775.00) |
| **Refund Due Claimant** | = $( | 1,100.00) |

2. Respondent White Pacific is charged with the following fees and costs:

| | | |
|---|---|---|
| Member Fees | = $ | 7,000.00 |
| Forum Fees | = $ | 9,150.00 |
| Total Fees | = $ | 16,150.00 |
| Less Payments | = $( | 7,000.00) |
| Less Unused Mediation Deposit | = $( | 350.00) |
| **Balance Due NASD-DR** | = $ | 8,800.00 |

All balances are payable to NASD Dispute Resolution and are payable upon the receipt of the Award pursuant to Rule 10330(g) of the Code.

06/05/2007 16:22 FAX                                                              @012/015

NASD Dispute Resolution
Arbitration No. 04-03448
Award  Page 8 of 8

## ARBITRATION PANEL

Sheldon Michaels, Esq.          -       Public Arbitrator, Presiding Chair
Barbara M. Anscher, Esq.        -       Public Arbitrator
Jane F. Gundermann              -       Non-Public Arbitrator

Concurring Arbitrators' Signatures

_Sheldon Michaels_              _June 4, 2007_
Sheldon Michaels, Esq.          Signature   Date
Chair, Public Arbitrator


_____         _____
Barbara M. Anscher, Esq.        Signature   Date
Public Arbitrator


_____         _____
Jane F. Gundermann              Signature   Date
Non-Public Arbitrator

                                _6/5/07_
                                Date of Service

NASD Dispute Resolution
Arbitration No. 04-05449
Award  Page 8 of 8

### ARBITRATION PANEL

| | | |
|---|---|---|
| Sheldon Michaels, Esq. | - | Public Arbitrator, Presiding Chair |
| Barbara M. Anscher, Esq. | - | Public Arbitrator |
| Jane F. Gundermann | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

Sheldon Michaels, Esq.
Chair, Public Arbitrator

_____
Signature Date

*Barbara M Anscher*
Barbara M. Anscher, Esq.
Public Arbitrator

6-1-07
Signature Date

Jane F. Gundermann
Non-Public Arbitrator

_____
Signature Date

6 5/07
Date of Service

# Exhibit B

# SULLWOLD & HUGHES
### ATTORNEYS AT LAW
235 MONTGOMERY STREET, SUITE 730
SAN FRANCISCO, CALIFORNIA 94104
FAX (415) 089-9798
TELEPHONE (415) 283-1850

DIRECT DIAL
(415) 263-1853

E MAIL
rts@greenstamps.com

July 5, 2007

BY FAX AND REGULAR MAIL

Derek L. Sorrells
NASD Dispute Resolution
300 South Grand Avenue, Suite 900
Los Angeles, California 90071

Re: Denise Reed v. White Pacific Securities, Inc. et al.
(NASD Arb. No. 04-02449)

Dear Mr. Sorrells:

Following up on your letter of June 28, please be advised as follows:

- My client, respondent White Pacific Securities ("White Pacific"), today mailed a check in the amount of $5,603.70 to claimant's counsel. This amount represents the sum of the costs and reimbursement for the filing fee the panel ordered White Pacific to pay to claimant in the Award served on June 5 (the "Award").

- In addition, White Pacific has established an escrow with the law firm of Lippenberger, Thompson, Welch, Soroko & Gilbert LLP, 201 Tamal Vista Blvd., Corte Madera, CA 94925 and today wired-transferred $158,797.10 to that firm's trust account. This represents the amount of attorneys' fees the panel ordered White Pacific to pay claimant in the Award. The escrow instructions provide that the escrow holder is to disburse the funds in accordance with the decision of the panel on White Pacific's motion to modify the Award as to attorneys' fees.

I was copied on Mr. Frost's letter to you of the 28th in which he asserted that White Pacific "do[es] not intend to pay" the Award and demanded that you "commence proceedings to suspend or cancel [White Pacific's] membership." The factual allegation made by Mr. Frost was inaccurate at the time it was made and it is even less credible now in light of the actions taken by White Pacific described above. Likewise, the demand made by Mr. Frost was premature and inappropriate at the time it was made and it has even less merit now. Simply put, White Pacific has asked the panel to consider a legal issue that, it believes, will result in modification of the Award; at the same time, it has taken steps to ensure that claimant will be paid in full if the panel denies the motion. In so doing, White Pacific has shown the good faith expected of NASD member firms.

SULLWOLD & HUGHES

Derek L. Sorrells
July 5, 2007
Page 2

Please do not hesitate to call with any questions.

Sincerely yours,

Robert T. Sullwold

cc:    Thomas C. Frost, Esq. (By FAX and regular mail)

# Exhibit C

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made and entered into as of the date set forth herein below by and between _DENISE R. REED_, ("Independent Contractor"), and White Pacific Securities, Inc., a Nevada corporation, and any and all divisions thereof (collectively "White Pacific"). As the parties desire that the Independent Contractor associate with White Pacific such that Independent Contractor shall conduct his/her own independent securities business and transmit orders for the purchase and sale of securities for which White Pacific may now or hereafter act as broker-dealer, the parties agree as follows:

## AGREEMENT

1.    <u>Associated Person Status</u>. At all times this Agreement is in effect, Independent Contractor agrees to be appropriately licensed and registered in good standing with all appropriate federal, state and self-regulatory and quasi-regulatory organizations to engage in securities transactions as an "Associated Person" within the meaning of Section 3(a)(18) of the Securities Exchange Act of 1934, as amended (Exchange Act), and as a "Registered Representative" within the meaning of Schedule C to Article II of the Bylaws of the National Association of Securities Dealers, Inc. ("NASD").

2.    <u>Compliance with All Applicable Rules regarding the Brokerage Industry</u>. It is specifically understood by the parties hereto that Independent Contractor shall have sole and exclusive direction and control over the manner, method and means of conducting his/her securities business. Notwithstanding, Independent Contractor represents and warrants that during the term of registration or association with White Pacific, he/she shall operate and conduct his/her brokerage business in strict compliance with the rules and regulations of the Securities Act of 1933, as amended, (Exchange Act), the Investment Company Act of 1940, as amended, the Investment Advisors Act of 1940, as amended, all other acts or regulations administered by the Securities and Exchange Commission, the rules of the NASD, and all other statutes and regulations of the United States of America or any state authority responsible for the regulation of securities or any regulatory, self-regulating organization or body of which White Pacific may be a member or on which a transaction or trade may be executed or conducted. These rules and regulations will be referred to in this Agreement as "Applicable Regulations and Rules." Independent Contractor shall obtain and maintain all such licenses, state or otherwise, and other appropriate registration(s) as may be mandated by the type and kind of his/her independent brokerage operation.

091

3.    <u>Source of Customer</u>. Independent Contractor does not and will not rely on White Pacific to provide customers, and desires to solicit and/or receive orders for securities transactions as sole proprietor independent business under his/her sole and exclusive control such that Independent Contractor shall at all times have and maintain exclusive direction and control over the manner, method and means of engaging in the business and operation of the offering, solicitation or receipt of securities transaction orders.

4.    <u>Training</u>. Independent Contractor has previously been an Associated Person under the Exchange Act, or is experienced as such, and does not and will not rely on White Pacific to provide training, except to the extent White Pacific is required to maintain compliance with Applicable Regulations or Rules.

5.    <u>Customer Information</u>. Independent Contractor agrees that he/she at all times will comply with Applicable Regulations and Rules by obtaining and maintaining an accurate and current written record of all relevant customer information or any such other information as may be necessary to determine the "suitability" of an investor for any given investment, as that term is understood or interpreted under Applicable Regulations and Rules. Independent Contractor may, but not exclusively, use the White Pacific brokerage account application (New Account Application) to obtain and maintain the information. Independent Contractor agrees that he/she will comply with Applicable Regulations and Rules by knowing, adhering to and maintaining an accurate and current written record of any customer's "investment objectives," or "financial profile," as these terms are commonly understood in the brokerage industry, as a whole, and insuring that all the required forms are appropriately completed and signed by the customer, as the case may be, and that the original is on file with either White Pacific or its clearing agent, as appropriate. Independent Contractor further represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by not soliciting, accepting or placing orders, including unsolicited orders, for sales or securities unless they are suitable for that customer, and until they have been duly authorized for purchase by the customer or their duly authorized (with appropriate documentation) agent.

6.    <u>Independent Contractor Status</u>. The relationship between Independent Contractor and White Pacific shall be that of an independent contractor, and nothing contemplated as part of this Agreement shall be construed to create an employer-employee relationship. Independent Contractor shall and does hereby assume and accept any and all responsibilities which are imposed upon an independent contractor by any federal, state or local statute, regulation, or rule, including but not limited to the Applicable Regulations and Rules. Except as required by the Applicable Regulations and Rules, White Pacific shall not direct, determine or control, in any manner, the method or means by which the Independent Contractor shall conduct his/her securities operation or business. Independent Contractor shall use his or her sole judgment with respect to the time, place and manner of any securities "solicitation," including orders taken on an "unsolicited" basis, as these terms are commonly understood in the brokerage business, of

securities orders, including any recommendations generally to such brokerage customers. Among other things, Independent Contractor shall (1) determine his/her own work hours; (2) pay his/her own business expenses, including, telephone, entertainment, advertising, secretarial assistance or any other office or business operational charge or expense, including any applicable state or regulatory registration or brokerage license fees or costs; (3) receive compensation solely on a commission basis; and (4) determine the specific types of securities or other investment vehicle to which he/she shall devote his/her business. Independent Contractor will supply all personnel to perform services under this Agreement. Independent Contractor shall be solely responsible for the direction and control of any personnel he/she supplies to perform services under this Agreement, including decisions regarding hiring, firing, supervision, assignment and the setting of wages and working conditions. White Pacific shall neither have nor exercise disciplinary control or authority over Independent Contractor or personnel supplied by Independent Contractor to perform services under this Agreement, except as required by the Applicable Regulations and Rules. **No personnel supplied by Independent Contractor to perform services under this Agreement shall be, or shall be deemed to be, the employee, agent or servant of White Pacific. Independent Contractor acknowledges his/her affirmative obligation to inform all such personnel that they are not employees of White Pacific.** White Pacific is interested only in the results obtained under this Agreement; the manner and means by which Independent Contractor performs services under this Agreement is under the sole direction and control of Independent Contractor. Independent Contractor will be solely and entirely responsible for the acts of any personnel supplied to perform services under this Agreement. Independent Contractor shall retain sole financial responsibility for all withholding and employment taxes due to any federal, state or local authority on account of the work performed by Independent Contractor and any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor agrees to indemnify and hold harmless White Pacific from any claims made by any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor acknowledges and agrees that as an independent contractor, he/she will not receive retirement benefits, unemployment insurance, health insurance, life insurance, disability insurance, or worker's compensation insurance from White Pacific, and that White Pacific will not withhold personal income tax, social security tax, or any other state, federal or local tax from the commission paid to Independent Contractor, unless ordered to by a competent state or federal authority. Independent Contractor acknowledges that the payment of such taxes including income taxes and self-employment taxes are his/her own personal responsibility and obligation. Independent Contractor shall independently provide, maintain and control, at his/her expense, all the equipment, tools, and data necessary to operate his/her securities business. White Pacific may, although is not required under this Agreement to, make available equipment or other data or technology, electronic or otherwise, to obtain quotations of the market price of securities or other generally available market data regarding the stock market generally or for a particular security. Independent Contractor acknowledges and agrees that White

Pacific does not independently provide such research or data, and is in no way providing investment advice generally or making any investment recommendation to any brokerage customer, rather such skills and advice are provided by Independent Contractor to his/her brokerage customer.

7.    <u>No Actual or Ostensible Authority</u>. **Independent Contractor acknowledges that he/she is not an agent of White Pacific for purposes of entering into agreements, or binding White Pacific to contracts, and that it would be unlawful to represent him/herself as having either actual or ostensible authority to open any account, or to enter into agreements or contracts on White Pacific's behalf, or in White Pacific's name, other than related to the sales of securities as a Registered Representative of White Pacific.** Independent Contractor is not authorized to pledge the credit of White Pacific or to contractually obligate White Pacific in any manner. Any reference to White Pacific as a corporate entity ("*White Pacific Securities, Inc.*" or "*White Pacific Securities*") in any agreements or contracts Independent Contractor enters into by way of conducting his/her independent securities brokerage business is <u>voidable and strictly prohibited, and can result in termination of Independent Contractor's affiliation with White Pacific for cause</u>. Any contract or agreement Independent Contractor signs must be executed either in his/her individual capacity or as an authorized party in a separately-held corporation.

8.    <u>Receipt of Back-Office and Compliance Manuals</u>. Solely for the purpose of compliance with Applicable Regulations and Rules, Independent Contractor acknowledges receipt of both White Pacific's *Compliance* and *Back Office Policy and Procedure Manuals* and represents that he/she has carefully read the same and understands the regulatory and operational requirements imposed thereby and <u>agrees to conduct his/her brokerage business and operation in conformity with such regulatory requirements</u>. Independent Contractor agrees that these documents are the property of White Pacific and that upon the termination of this Agreement, Independent Contractor will promptly return to White Pacific all copies of these documents.

9.    <u>Other Regulatory Requirements</u>. Independent Contractor represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by taking no action which he/she may have reason to believe is inconsistent with the best interest of his/her clients or customers. In this connection, Independent Contractor acknowledges his or her affirmative duty to disclose to any brokerage customer (or member of the general public) any and all known material facts relating to any contemplated securities transaction. Independent Contractor represents that he/she is familiar with the ongoing requirement under Applicable Regulations and Rules that he/she "know their customer," acknowledges the responsibility to know and understand what is imposed by such a rule, including, but not limited to, transactions done both on a full service or possibly discounted or solicited or recommended basis, if applicable, and agrees at all times to conduct his/her securities business in a manner consistent therewith, such that all customer transactions are suitable for said customer.

*Independent Contractor Agreement*        4        Independent Contractor Initials: ____

10.    <u>Solicitation</u>. As required by Applicable Regulations and Rules, Independent Contractor shall not use or cause to be used what could be deemed a solicitation, including, but not limited to any prospectus, subscription agreement, sales literature, news letter, analysis, or advertising material, of any kind, electronic or otherwise, unless initialed and pre-approved by White Pacific's Compliance Department. *Independent Contractor acknowledges that he/she is not authorized, unless properly licensed, to provide any tax or legal advice to his/her customers.*

11.    <u>Controls on Monies, Funds and Securities Received</u>. As required by Applicable Regulations and Rules, Independent Contractor agrees to maintain strict controls over, and immediately forward to White Pacific for deposit to its clearing agent, all monies and securities received from any brokerage client or customer, during the term of registration with White Pacific, as payment for securities purchased or to be purchased in the future, without commingling, pledging or diverting same in any manner. Independent Contractor warrants that he/she shall ensure that all of his/her brokerage clients or customers promptly remit, in negotiable form, all monies or securities, as the case may be, to White Pacific for deposit to its clearing agent in accordance with Regulation T. Independent Contractor will partly accomplish this by, at all times, advising and explaining to all his/her brokerage customers that all such checks need to be made payable to White Pacific's clearing agent, that all securities must be delivered in negotiable form, and that proceeds must be held until cleared by the third-party clearing agent accordingly.

12.    <u>Securities Must be Registered</u>. As required by Applicable Regulations and Rules, Independent Contractor warrants and agrees that he/she will not solicit orders for and consummate sales for securities until he/she has been duly registered under and pursuant to applicable state and federal laws and in connection therewith, and further, unless such registration is then in effect. As required by Applicable Regulations and Rules, orders for the purchase of shares or other securities shall be subject to acceptance and approval of White Pacific, without warranty as to suitability of the investment.

13.    <u>Confidentiality</u>. Independent Contractor acknowledges that in the course of the performance or actions contemplated by the Agreement, he/she may be provided with non-public confidential information about his/her brokerage customer, White Pacific, or third parties with which White Pacific may have a relationship (such information being referred to collectively as "Confidential Information"). Independent Contractor agrees to comply with all Applicable Regulations and Rules concerning Confidential Information and agrees that he/she will treat all Confidential Information as confidential, whether marked as such or otherwise, maintaining such information in strict confidence, and not using Confidential Information for any purpose except performing under this Agreement, and using at least reasonable care to avoid unauthorized use or disclosure of such Confidential Information. **Independent Contractor further acknowledges that White Pacific "house accounts" are valuable and proprietary to White Pacific and agrees**

not, at any time, to solicit said accounts or in any way seek to usurp, compromise or interfere with the proprietary rights of White Pacific in this regard.

14. <u>Best Efforts and Outside Business Activity</u>. Independent Contractor warrants and agrees to use his/her best efforts in representing White Pacific in a regulatory appropriate manner and will take no action which shall injure White Pacific, expose White Pacific to liability, or harm its professional or business reputation, including violating any federal, state or regulatory rule of law, including, without limitation, any National Association of Securities Dealers, Inc. (NASD) Rule, nor shall he/she directly or indirectly cause or induce any persons to violate his/her Independent Contractor Agreement with White Pacific. Independent Contractor shall have the right to engage in unrelated business or employment outside the securities operation or independent business contemplated as part of this Agreement, but is prohibited from being dually licensed with another broker-dealer, unless approved in writing by White Pacific, and, furthermore, will comply with Applicable Regulations and Rules by promptly reporting such business or employment activities by providing documentation, information and data regarding such activities to White Pacific, attention Compliance Department. White Pacific shall receive no direct or indirect compensation or remuneration for such outside or unrelated business activities. Independent Contractor shall comply with Applicable Regulations and Rules by not engaging in express or implied association, representation or employment in any non-securities or securities business activity outside the scope of his/her relationship with White Pacific without first providing written notice to White Pacific as to any non-securities activity and written notice to, and obtaining consent from, White Pacific as to any securities activities. If White Pacific consents to Independent Contractor's participation deemed to be a "private securities transaction" as that term is defined in NASD Conduct Rule 3040, the transaction shall be recorded on the books and records of White Pacific. Failure to provide such written notice as to non-securities related activities or failure to provide prior written notice and to obtain consent of White Pacific, as required by Applicable Regulations and Rules, as to securities related activities, may result in termination of this Agreement by White Pacific, and/or termination for cause from affiliation with White Pacific. As required by Applicable Regulations and Rules, Independent Contractor agrees that in the course of his/her brokerage activities contemplated as part of this Agreement, he/she shall at all times disclose and represent that he/she is acting in the capacity of a registered representative or associated person of White Pacific and that all transactions in securities of any nature, shall be placed through White and its clearing agent, as appropriate.

15. <u>Commissions</u>. Independent Contractor shall be compensated on a commission basis based upon sales concluded less the agreed upon clearing schedule charges. However, payment to the Independent Contractor by White Pacific of commissions earned shall, in all events, be subject to receipt by White Pacific of payment in full from the clients of the Independent Contractor for any securities purchased or sold. In the event of payment of commissions to the Independent Contractor by White Pacific in excess of commissions

earned by the Independent Contractor as determined by the Commission schedule then in effect and as may be amended or supplemented from time to time by solely in the discretion of White Pacific, without notice to Independent Contractor, such excess amount shall be deemed an advance against future commissions and the excess payment shall be refunded to White Pacific in the event of termination of this Agreement.

16.    Miscellaneous Expenses. As a condition to association with White Pacific, Independent Contractor agrees to pay and deposit with White Pacific all costs of registration with the NASD, registration with the State of California and any other states in which the Independent Contractor may conduct business, fingerprinting processing and, if applicable, the Temporary Agent Transfer Fee. Independent Contractor shall also be responsible, as may be appropriate, for other costs associated with his/her business such as state examination fees. Independent Contractor shall pay White Pacific an administrative fee in the amount of $125.00 per month in which the Independent Contractor's earned gross commissions do not exceed two thousand dollars ($2,000.00) during such month. Such administrative fee shall be due and payable by the Independent Contractor on or before the fifth (5th) business day of the month following the month in which the earned gross commissions do not exceed $2,000.00.

17.    *Complaints. Independent Contractor agrees and warrants that he/she will contact White Pacific, in writing, within 24 hours of receiving any customer complaint, objection, inquiry, whether oral or otherwise, regarding any brokerage activity of Independent Contractor, as contemplated herein, or any contact, proceeding, or inquiry from any state or federal entity or regulatory organization during the term of this Agreement.*

18.    Term of Agreement. The Agreement shall be for a period of one (1) year from the date hereof and shall automatically renew upon these terms and provisions, or upon any terms or provisions then agreed upon, in writing, by the parties hereto. Either party may terminate this Agreement for any reason upon giving thirty (30) days' notice of termination to the other. Should either party breach any provision of this Agreement, the other may terminate this Agreement immediately by giving notice to the other.

19.    Notice. Termination under this Agreement shall be deemed given on the day mailed or delivered. If mailed to White Pacific, it shall be addressed to the principal office of White Pacific, attention President. If mailed to the Independent Contractor, it shall be addressed to his/her last known address as shown on the records of White Pacific.

Notice to White Pacific shall be at the following address, unless otherwise instructed:

White Pacific Securities, Inc.
Attention: President
301 Mission Street, 5th Floor
San Francisco, CA 94105-2243
Telephone: 415.597.6850

*Independent Contractor Agreement*          7          Independent Contractor Initials: _DE_

094

Fax:    415.543.6972

20.    <u>Arbitration of Customer Disputes.</u> Independent Contractor hereby represents and warrants to White Pacific that all new customer accounts opened by Independent Contractor shall, in all events, require the binding arbitration of disputes between such customer and White Pacific before the NASD or any exchange of which White Pacific may be a member. Independent Contractor may, but is not required to, use the White Pacific brokerage account application (New Account Application) to fulfill this provision.

21.    <u>Allocation of Responsibility.</u> Errors, misunderstandings or controversies, except those specifically covered in this Agreement, between Independent Contractor's customer or White Pacific and Independent Contractor, his/her agents or his/her employees (if applicable), which shall arise out of the acts or omissions Independent Contractor, his/her agents or his/her employees, shall be Independent Contractor's responsibility and liability and shall be allocated accordingly. White Pacific will only be responsible for the acts of its employees, and will take such reasonable actions as may be necessary or appropriate and consistent with sound business practices of the securities industry to correct or adjust errors, misunderstandings or controversies arising out of the acts or omissions of its employees, provided that Independent Contractor's customer has not been unduly enriched, in which case Independent Contractor shall be financially responsible.

22.    **Independent Contractor's Indemnification of White Pacific. Independent Contractor, through his/her direct or indirect acts, omissions, or generally for those whom he/she supervises and/or otherwise controls, without limitation, shall be responsible for all demands, liabilities, losses, expenses and costs (including arbitration costs and awards and legal fees and expenses related to White Pacific's defense of any such claim), debts, costs, errors or expenses, incurred by White Pacific, or its clearing agent, by way of Independent Contractor's brokerage business, for his/her customer accounts or otherwise, as well as for the defense of any action or claim, real or threatened, either in court or before any regulatory or self-regulatory body, including the Pacific or New York Exchanges or the NASD, against him/her and/or White Pacific as a result of his/her securities or related business activity contemplated hereunder. Independent Contractor hereby agrees and shall indemnify and hold White Pacific harmless from any and all settlement, adverse judgment, joint or several, ruling or decision thereon, including reasonable legal fees and costs incurred in connection with the investigation and/or defense of such matter. Independent Contractor agrees that such reimbursement shall be in lawful monies of the United States of America, or in negotiable securities, and may be obtained directly by White Pacific, without further notice to the Independent Contractor, from any income source, whether in-state or out, including monies due Independent Contractor in compensation, future or otherwise, and/or other earned, future or otherwise, but undistributed brokerage commissions derived or due from Independent Contractor's activity as an Registered Representative of White Pacific,**

or other assets or accounts held by White Pacific for Independent Contractor, and/or any income or monies that may be received or controlled by Independent Contractor, in any capacity, regardless of domicile, residency or employment status. Independent Contractor acknowledges that at no time has (or will) White Pacific offered (offer) any legal or tax advice to him/her during the term of this Agreement.

095

23.    Complete Agreement. This Agreement constitutes the complete, exclusive, and final expression of the agreement between the parties with respect to the subject matter herein, and replaces and supersedes all prior written and oral agreements, discussions, understandings or statements by, and between, the parties hereto. This Agreement, or any provision hereof, may only be amended or waived by a writing signed by an authorized person representing both parties.

24.    Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

25.    Interpretation. In the event any claim is made by any party relating to any conflict, omission, or ambiguity in this Agreement, no presumption or burden of proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by, or at the request of, a particular party or its counsel.

26.    Disputed Matters: Arbitration, Governing Law and Jurisdiction. Independent Contractor agrees to arbitrate any dispute, claim or controversy that may arise between Independent Contractor and White Pacific that is required to be arbitrated under the rules, constitutions or by-laws of the NASD as may be amended from time to time and that any arbitration award rendered may be entered as a judgment in any court of competent jurisdiction. In the event that a court of competent jurisdiction determines that any dispute, claim or controversy between Independent Contractor and White Pacific is not required to be arbitrated, each party consents to the exclusive jurisdiction of the state and federal courts sitting in the City and County of San Francisco, State of California in any civil action.

27.    Severability. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement shall not be affected thereby.

28.    Attorney Fees. In the event any dispute among the parties should result in litigation or arbitration, the prevailing party in such a dispute shall be entitled to recover from the non-prevailing party all reasonable fees, costs, expenses of enforcing any right of the prevailing party, including, without limitation, reasonable attorneys' fees and expenses.

29.    Waiver. The waiver of any provision or breach of this Agreement in any instance or instances shall not constitute a waiver or a release of any other provision or breach of this Agreement in any other instance or instances.

30. <u>Fair Credit Reporting Act Notification</u>. With the enactment of "The Fair Credit Reporting Act," White Pacific is required to notify an applicant when a character/credit inquiry is made. In compliance with this guideline, this is to inform you that as part of our procedure in processing your NASD registration application, an investigative report may be made whereby information is obtained through personal interviews with third parties, such as business associates or others with whom you are acquainted. This inquiry includes information as to your personal character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.

**INDEPENDENT CONTRACTOR**

Signature _____          Date __12/14/00__

Print Name __DENISE REED__

**WHITE PACIFIC SECURITIES, INC.**

Signature _____          Date __5/14/01__

Print Name __Stephen C. Lee__

*Independent Contractor Agreement*            11            Independent Contractor Initials: __DR__