1  Erwin J. Shustak [CBN 119152]
   shustak@shufirm.com
2  Thomas C. Frost [CBN 185187]
   tfrost@shufirm.com
3  Jonah A. Toleno [CBN 209600]
   jtoleno@shufirm.com
4  SHUSTAK & PARTNERS, P.C.
   401 West "A" Street, Suite 2330
5  San Diego, CA 92101
   Telephone (619) 696-9500
6  Facsimile (619) 615-5290

7  Attorneys for Petitioner
   DENISE R. REED
8

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12  DENISE R. REED,                    )    Case No. 4:07-CV-03648-CW
                                       )
         Petitioner,                    )    DECLARATION OF JONAH A.
13                                      )    TOLENO, ESQ., IN SUPPORT OF
    vs.                                 )    PETITIONER DENISE R. REED'S
14                                      )    MOTION FOR AWARD OF
    NATIONAL ASSOCIATION OF             )    ATTORNEYS' FEES
15  SECURITIES DEALERS, INC., WHITE     )
    PACIFIC SECURITIES, INC.            )    Hearing Date: January 10, 2008
16  and ROY L. PANELLI,                 )    Hearing Time: 2:00 p.m.
                                       )    Judge: Hon. Claudia Wilken
17       Respondents.                   )
                                       )
18  _____ )     Petition Filed: July 16, 2007

19

20       I, JONAH A. TOLENO, ESQ., declare as follows:

21       1.    I am an attorney licensed to practice law before all courts of the State of

22  California and a member of Shustak & Partners, P.C., counsel for Petitioner DENISE R. REED

23  ("Reed") in the above-captioned matter. I am fully familiar with the facts set forth below. If

24  called to testify at trial I could and would competently testify to the following.

25       2.    Reed filed her initial Statement of Claim against Respondents WHITE PACIFIC

26  SECURITIES, INC. ("White Pacific") and ROY L. PANELLI ("Panelli") with NASD in NASD

27  Case No. 04-03449 on May 4, 2004, and her First Amended Statement of Claim on January 12,

28  2007.

                                          1
    ───────────────────────────────────────────────────────────────
    DECLARATION OF JONAH A. TOLENO, ESQ.              4:07-CV-03648-CW

3.      At all times relevant to Reed's Statement of Claim, First Amended Statement of Claim, the underlying arbitration, and this action, there was and is in effect an Independent Contractor Agreement (the "Agreement") between Reed and White Pacific, which provides that, "In the event any dispute among the parties should result in litigation or arbitration, the prevailing party in such a dispute shall be entitled to recover from the non-prevailing party all reasonable fees, costs, expenses of enforcing any right of the prevailing party, including, without limitation, reasonable attorneys' fees and expenses.". A true and correct copy of the Agreement is marked and attached hereto as Exhibit "A".

3.      Reed alleged in her Statements of Claim that White Pacific and Panelli had inaccurately reported certain events on her Forms U-4 and U-5 filed with the Central Registration Depository ("CRD").  Reed sought expungement of these inaccurately reported events on her Forms U-4 and U-5, and alleged causes of action for defamation, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.

4.      The matter proceeded to hearing in San Francisco, California, on April 16-18, 2007.  The arbitration panelists (the "Panel") made their decision shortly thereafter and the NASD served the Arbitration Award (the "Award") on the parties on June 5, 2007.  A true and correct copy of the Award is marked and attached hereto as Exhibit "B."

5.      The Panel held in its Award that White Pacific and Panelli had not accurately reported and maintained Reed's CRD records, and thus granted Reed's request for expungement of inaccuracies on her U-4, U-5 and her CRD records.

6.      Of the seven occurrences on Reed's U-4, U-5 and CRD records for which Reed sought amendment, the panel recommended (a) expungement of five of the occurrences (occurrences "a" - "e" as referenced on the Award) on the basis that they were "clearly erroneous", and (b) expungement of two of the occurrences (occurrences "f" and "g" as referenced on the Award) on the basis that they were "defamatory".

7.      The Panel determined that Reed was the prevailing party and awarded Reed her reasonable attorneys' fees and costs incurred in bringing the arbitration matter. FINRA required Reed to confirm the Award before it would execute the expungement relief set forth in the

DECLARATION OF JONAH A. TOLENO, ESQ.                                    4:07-CV-03648-CW

1  Award.   In accordance with the Award, Reed filed her Petition to Confirm the Arbitration

2  Award on July 16, 2007, and First Amended Petition on July 24, 2007.

3         8.      In the meantime, on July 6, 2007, White Pacific filed with FINRA a Motion to

4  Modify Arbitration Award as to Attorneys' Fees. In addition to formally opposing the motion,

5  my firm exchanged multiple correspondences with FINRA concerning White Pacific's refusal to

6  pay the attorneys' fees awarded to Reed. The Panel ruled in Reed's favor. True and correct copies

7  of White Pacific's Motion to Modify Arbitration Award, Reed's Opposition to same, and the

8  Panel's ruling are collectively marked and attached hereto as Exhibit "C". Pursuant to FINRA

9  Arbitration Code Section 10330(h), White Pacific was required to pay the amounts directed by

10  the Award within thirty (30) days of the date of the Award, or else pay interest at the legal rate on

11  the Award amount.

12         9.      On August 1, 2007, White Pacific paid Reed the following amounts in connection

13  with the arbitration: $158,797.10 for her attorneys' fees, $5,228.70 for her costs and expenses,

14  $375 for filing fees. But it did not timely make its payment, so Reed was forced to incur

15  attorneys' fees in enforcing the interest requirement of FINRA Arbitration Code Section

16  10330(h). White Pacific eventually paid Reed the interest due on the Award amount pursuant to

17  Section 10330(h), but only after Reed's and White Pacific's counsel exchanged extensive

18  correspondence on the matter.

19        10.     Since the issuance of the Award, Reed has incurred $42,140.54 in attorneys' fees,

20  costs and expenses in connection with the enforcement of her rights as the prevailing party. In

21  addition to those fees incurred in the drafting, filing, and litigating her petition, Reed has incurred

22  fees arising out of jurisdictional objections raised by White Pacific prior to filing its answer.

23  Although White Pacific did not bring a formal motion asserting its jurisdiction objection, counsel

24  for Reed was called upon to address White Pacific's pre-Answer objections by way of research

25  and substantial correspondence with White Pacific's counsel.

26        11.     The fees, costs and expenses sought in this Motion were incurred in the

27  enforcement of Reed's rights as the prevailing party, including responding to White Pacific's

28  Motion to Modify Award and jurisdictional objections; the  preparation, filing and litigation of

1  the Petition action; and litigating with FINRA to ultimately reach a joint stipulation for entry of

2  judgment confirming sections 3B-3G of the Award and withdrawing Reed's request for

3  confirmation of Section 3A of the Award (the "Judgment Stipulation", on file with this Court

4  herein).

5          12.    As part of the Judgment Stipulation FINRA agreed to resolve Section 3A of the

6  Award with Reed outside of the petition litigation, notwithstanding the language of the Award

7  and FINRA rules requiring Reed to confirm the Award before receiving the requested relief.

8  FINRA and Reed entered into the Judgment Stipulation in the interest of efficiency for all parties

9  involved. Since FINRA agrees to resolve Section 3A of the Award without court confirmation,

10  Reed excludes from this Motion the fees she incurred and continues to incur solely in connection

11  with the resolution of Section 3A subsequent to the stipulation and entry of judgment. A true and

12  correct copy of a summary of Reed's attorneys' fees, costs and expenses is marked and attached

13  hereto as Exhibit "D".

14          13.    The attorneys' fees, costs and expenses sought in this Motion were incurred solely

15  through Reed's compliance with FINRA requirements for enforcing the Award. By working with

16  FINRA to reach the Judgment Stipulation, Reed and my firm have saved the parties a great deal

17  of time, money and resources, in that the resolution of this action required no additional motion

18  practice, hearings, or appearances by counsel. Thus, Shustak & Partners respectfully submits that

19  this Motion is made in good faith and in accordance with the provisions of the Agreement

20  voluntarily entered into by each of the parties.

21          I declare under penalty of perjury under the laws of the State of California that the

22  foregoing is true and correct.

23          Executed this 5th day of December, 2007, at San Diego, California.

24

25                                  s/Jonah A. Toleno
                                    JONAH A. TOLENO, ESQ.
26                                  Attorney for Petitioner

27

28

DECLARATION OF JONAH A. TOLENO, ESQ.                    4:07-CV-03648-CW

EXHIBIT A

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made and entered into as of the date set forth herein below by and between ___DENISE R. REED___, ("Independent Contractor"), and White Pacific Securities, Inc., a Nevada corporation, and any and all divisions thereof (collectively "White Pacific"). As the parties desire that the Independent Contractor associate with White Pacific such that Independent Contractor shall conduct his/her own independent securities business and transmit orders for the purchase and sale of securities for which White Pacific may now or hereafter act as broker-dealer, the parties agree as follows:

## AGREEMENT

1.    <u>Associated Person Status.</u> At all times this Agreement is in effect, Independent Contractor agrees to be appropriately licensed and registered in good standing with all appropriate federal, state and self-regulatory and quasi-regulatory organizations to engage in securities transactions as an "Associated Person" within the meaning of Section 3(a)(18) of the Securities Exchange Act of 1934, as amended (Exchange Act), and as a "Registered Representative" within the meaning of Schedule C to Article II of the Bylaws of the National Association of Securities Dealers, Inc. ("NASD").

2.    <u>Compliance with All Applicable Rules regarding the Brokerage Industry.</u> It is specifically understood by the parties hereto that Independent Contractor shall have sole and exclusive direction and control over the manner, method and means of conducting his/her securities business. Notwithstanding, Independent Contractor represents and warrants that during the term of registration or association with White Pacific, he/she shall operate and conduct his/her brokerage business in strict compliance with the rules and regulations of the Securities Act of 1933, as amended, (Exchange Act), the Investment Company Act of 1940, as amended, the Investment Advisors Act of 1940, as amended, all other acts or regulations administered by the Securities and Exchange Commission, the rules of the NASD, and all other statutes and regulations of the United States of America or any state authority responsible for the regulation of securities or any regulatory, self-regulating organization or body of which White Pacific may be a member or on which a transaction or trade may be executed or conducted. These rules and regulations will be referred to in this Agreement as "Applicable Regulations and Rules." Independent Contractor shall obtain and maintain all such licenses, state or otherwise, and other appropriate registration(s) as may be mandated by the type and kind of his/her independent brokerage operation.

*Independent Contractor Agreement*    1    Independent Contractor Initials: _DR_

3.  <u>Source of Customer</u>. Independent Contractor does not and will not rely on White Pacific to provide customers, and desires to solicit and/or receive orders for securities transactions as sole proprietor independent business under his/her sole and exclusive control such that Independent Contractor shall at all times have and maintain exclusive direction and control over the manner, method and means of engaging in the business and operation of the offering, solicitation or receipt of securities transaction orders.

4.  <u>Training</u>. Independent Contractor has previously been an Associated Person under the Exchange Act, or is experienced as such, and does not and will not rely on White Pacific to provide training, except to the extent White Pacific is required to maintain compliance with Applicable Regulations or Rules.

5.  <u>Customer Information</u>. Independent Contractor agrees that he/she at all times will comply with Applicable Regulations and Rules by obtaining and maintaining an accurate and current written record of all relevant customer information or any such other information as may be necessary to determine the "suitability" of an investor for any given investment, as that term is understood or interpreted under Applicable Regulations and Rules. Independent Contractor may, but not exclusively, use the White Pacific brokerage account application (New Account Application) to obtain and maintain the information. Independent Contractor agrees that he/she will comply with Applicable Regulations and Rules by knowing, adhering to and maintaining an accurate and current written record of any customer's "investment objectives," or "financial profile," as these terms are commonly understood in the brokerage industry, as a whole, and insuring that all the required forms are appropriately completed and signed by the customer, as the case may be, and that the original is on file with either White Pacific or its clearing agent, as appropriate. Independent Contractor further represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by not soliciting, accepting or placing orders, including unsolicited orders, for sales or securities unless they are suitable for that customer, and until they have been duly authorized for purchase by the customer or their duly authorized (with appropriate documentation) agent.

6.  <u>Independent Contractor Status</u>. The relationship between Independent Contractor and White Pacific shall be that of an independent contractor, and nothing contemplated as part of this Agreement shall be construed to create an employer-employee relationship. Independent Contractor shall and does hereby assume and accept any and all responsibilities which are imposed upon an independent contractor by any federal, state or local statute, regulation, or rule, including but not limited to the Applicable Regulations and Rules. Except as required by the Applicable Regulations and Rules, White Pacific shall not direct, determine or control, in any manner, the method or means by which the Independent Contractor shall conduct his/her securities operation or business. Independent Contractor shall use his or her sole judgment with respect to the time, place and manner of any securities "solicitation," including orders taken on an "unsolicited" basis, as these terms are commonly understood in the brokerage business, of

securities orders, including any recommendations generally to such brokerage customers. Among other things, Independent Contractor shall (1) determine his/her own work hours; (2) pay his/her own business expenses, including, telephone, entertainment, advertising, secretarial assistance or any other office or business operational charge or expense, including any applicable state or regulatory registration or brokerage license fees or costs; (3) receive compensation solely on a commission basis; and (4) determine the specific types of securities or other investment vehicle to which he/she shall devote his/her business. Independent Contractor will supply all personnel to perform services under this Agreement. Independent Contractor shall be solely responsible for the direction and control of any personnel he/she supplies to perform services under this Agreement, including decisions regarding hiring, firing, supervision, assignment and the setting of wages and working conditions. White Pacific shall neither have nor exercise disciplinary control or authority over Independent Contractor or personnel supplied by Independent Contractor to perform services under this Agreement, except as required by the Applicable Regulations and Rules. **No personnel supplied by Independent Contractor to perform services under this Agreement shall be, or shall be deemed to be, the employee, agent or servant of White Pacific. Independent Contractor acknowledges his/her affirmative obligation to inform all such personnel that they are not employees of White Pacific.** White Pacific is interested only in the results obtained under this Agreement; the manner and means by which Independent Contractor performs services under this Agreement is under the sole direction and control of Independent Contractor. Independent Contractor will be solely and entirely responsible for the acts of any personnel supplied to perform services under this Agreement. Independent Contractor shall retain sole financial responsibility for all withholding and employment taxes due to any federal, state or local authority on account of the work performed by Independent Contractor and any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor agrees to indemnify and hold harmless White Pacific from any claims made by any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor acknowledges and agrees that as an independent contractor, he/she will not receive retirement benefits, unemployment insurance, health insurance, life insurance, disability insurance, or worker's compensation insurance from White Pacific, and that White Pacific will not withhold personal income tax, social security tax, or any other state, federal or local tax from the commission paid to Independent Contractor, unless ordered to by a competent state or federal authority. Independent Contractor acknowledges that the payment of such taxes including income taxes and self-employment taxes are his/her own personal responsibility and obligation. Independent Contractor shall independently provide, maintain and control, at his/her expense, all the equipment, tools, and data necessary to operate his/her securities business. White Pacific may, although is not required under this Agreement to, make available equipment or other data or technology, electronic or otherwise, to obtain quotations of the market price of securities or other generally available market data regarding the stock market generally or for a particular security. Independent Contractor acknowledges and agrees that White

*Independent Contractor Agreement*          3          Independent Contractor Initials: _DR_

Pacific does not independently provide such research or data, and is in no way providing investment advice generally or making any investment recommendation to any brokerage customer, rather such skills and advice are provided by Independent Contractor to his/her brokerage customer.

7.  <u>No Actual or Ostensible Authority</u>. **Independent Contractor acknowledges that he/she is not an agent of White Pacific for purposes of entering into agreements, or binding White Pacific to contracts, and that it would be unlawful to represent him/herself as having either actual or ostensible authority to open any account, or to enter into agreements or contracts on White Pacific's behalf, or in White Pacific's name, other than related to the sales of securities as a Registered Representative of White Pacific.** Independent Contractor is not authorized to pledge the credit of White Pacific or to contractually obligate White Pacific in any manner. Any reference to White Pacific as a corporate entity ("*White Pacific Securities, Inc.*" or "*White Pacific Securities*") in any agreements or contracts Independent Contractor enters into by way of conducting his/her independent securities brokerage business is <u>voidable and strictly prohibited, and can result in termination of Independent Contractor's affiliation with White Pacific for cause.</u> Any contract or agreement Independent Contractor signs must be executed either in his/her individual capacity or as an authorized party in a separately-held corporation.

8.  <u>Receipt of Back-Office and Compliance Manuals</u>. Solely for the purpose of compliance with Applicable Regulations and Rules, Independent Contractor acknowledges receipt of both White Pacific's *Compliance* and *Back Office Policy and Procedure Manuals* and represents that he/she has carefully read the same and understands the regulatory and operational requirements imposed thereby and <u>agrees to conduct his/her brokerage business and operation in conformity with such regulatory requirements</u>. Independent Contractor agrees that these documents are the property of White Pacific and that upon the termination of this Agreement, Independent Contractor will promptly return to White Pacific all copies of these documents.

9.  <u>Other Regulatory Requirements</u>. Independent Contractor represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by taking no action which he/she may have reason to believe is inconsistent with the best interest of his/her clients or customers. In this connection, Independent Contractor acknowledges his or her affirmative duty to disclose to any brokerage customer (or member of the general public) any and all known material facts relating to any contemplated securities transaction. Independent Contractor represents that he/she is familiar with the ongoing requirement under Applicable Regulations and Rules that he/she "know their customer," acknowledges the responsibility to know and understand what is imposed by such a rule, including, but not limited to, transactions done both on a full service or possibly discounted or solicited or recommended basis, if applicable, and agrees at all times to conduct his/her securities business in a manner consistent therewith, such that all customer transactions are suitable for said customer.

10.    <u>Solicitation</u>. As required by Applicable Regulations and Rules, Independent Contractor shall not use or cause to be used what could be deemed a solicitation, including, but not limited to any prospectus, subscription agreement, sales literature, news letter, analysis, or advertising material, of any kind, electronic or otherwise, unless initialed and pre-approved by White Pacific's Compliance Department. *Independent Contractor acknowledges that he/she is not authorized, unless properly licensed, to provide any tax or legal advice to his/her customers.*

11.    <u>Controls on Monies, Funds and Securities Received</u>. As required by Applicable Regulations and Rules, Independent Contractor agrees to maintain strict controls over, and immediately forward to White Pacific for deposit to its clearing agent, all monies and securities received from any brokerage client or customer, during the term of registration with White Pacific, as payment for securities purchased or to be purchased in the future, without commingling, pledging or diverting same in any manner. Independent Contractor warrants that he/she shall ensure that all of his/her brokerage clients or customers promptly remit, in negotiable form, all monies or securities, as the case may be, to White Pacific for deposit to its clearing agent in accordance with Regulation T. Independent Contractor will partly accomplish this by, at all times, advising and explaining to all his/her brokerage customers that all such checks need to be made payable to White Pacific's clearing agent, that all securities must be delivered in negotiable form, and that proceeds must be held until cleared by the third-party clearing agent accordingly.

12.    <u>Securities Must be Registered</u>. As required by Applicable Regulations and Rules, Independent Contractor warrants and agrees that he/she will not solicit orders for and consummate sales for securities until he/she has been duly registered under and pursuant to applicable state and federal laws and in connection therewith, and further, unless such registration is then in effect. As required by Applicable Regulations and Rules, orders for the purchase of shares or other securities shall be subject to acceptance and approval of White Pacific, without warranty as to suitability of the investment.

13.    <u>Confidentiality</u>. Independent Contractor acknowledges that in the course of the performance or actions contemplated by the Agreement, he/she may be provided with non-public confidential information about his/her brokerage customer, White Pacific, or third parties with which White Pacific may have a relationship (such information being referred to collectively as "Confidential Information"). Independent Contractor agrees to comply with all Applicable Regulations and Rules concerning Confidential Information and agrees that he/she will treat all Confidential Information as confidential, whether marked as such or otherwise, maintaining such information in strict confidence, and not using Confidential Information for any purpose except performing under this Agreement, and using at least reasonable care to avoid unauthorized use or disclosure of such Confidential Information. **Independent Contractor further acknowledges that White Pacific "house accounts" are valuable and proprietary to White Pacific and agrees**

*Independent Contractor Agreement*                    5                    Independent Contractor Initials: DR

not, at any time, to solicit said accounts or in any way seek to usurp, compromise or interfere with the proprietary rights of White Pacific in this regard.

14.  Best Efforts and Outside Business Activity. Independent Contractor warrants and agrees to use his/her best efforts in representing White Pacific in a regulatory appropriate manner and will take no action which shall injure White Pacific, expose White Pacific to liability, or harm its professional or business reputation, including violating any federal, state or regulatory rule of law, including, without limitation, any National Association of Securities Dealers, Inc. (NASD) Rule, nor shall he/she directly or indirectly cause or induce any persons to violate his/her Independent Contractor Agreement with White Pacific. Independent Contractor shall have the right to engage in unrelated business or employment outside the securities operation or independent business contemplated as part of this Agreement, but is prohibited from being dually licensed with another broker-dealer, unless approved in writing by White Pacific, and, furthermore, will comply with Applicable Regulations and Rules by promptly reporting such business or employment activities by providing documentation, information and data regarding such activities to White Pacific, attention Compliance Department. White Pacific shall receive no direct or indirect compensation or remuneration for such outside or unrelated business activities. Independent Contractor shall comply with Applicable Regulations and Rules by not engaging in express or implied association, representation or employment in any non-securities or securities business activity outside the scope of his/her relationship with White Pacific without first providing written notice to White Pacific as to any non-securities activity and written notice to, and obtaining consent from, White Pacific as to any securities activities. If White Pacific consents to Independent Contractor's participation deemed to be a "private securities transaction" as that term is defined in NASD Conduct Rule 3040, the transaction shall be recorded on the books and records of White Pacific. Failure to provide such written notice as to non-securities related activities or failure to provide prior written notice and to obtain consent of White Pacific, as required by Applicable Regulations and Rules, as to securities related activities, may result in termination of this Agreement by White Pacific, and/or termination for cause from affiliation with White Pacific. As required by Applicable Regulations and Rules, Independent Contractor agrees that in the course of his/her brokerage activities contemplated as part of this Agreement, he/she shall at all times disclose and represent that he/she is acting in the capacity of a registered representative or associated person of White Pacific and that all transactions in securities of any nature, shall be placed through White and its clearing agent, as appropriate.

15.  Commissions. Independent Contractor shall be compensated on a commission basis based upon sales concluded less the agreed upon clearing schedule charges. However, payment to the Independent Contractor by White Pacific of commissions earned shall, in all events, be subject to receipt by White Pacific of payment in full from the clients of the Independent Contractor for any securities purchased or sold. In the event of payment of commissions to the Independent Contractor by White Pacific in excess of commissions

earned by the Independent Contractor as determined by the Commission schedule then in effect and as may be amended or supplemented from time to time by solely in the discretion of White Pacific, without notice to Independent Contractor, such excess amount shall be deemed an advance against future commissions and the excess payment shall be refunded to White Pacific in the event of termination of this Agreement.

16.  Miscellaneous Expenses. As a condition to association with White Pacific, Independent Contractor agrees to pay and deposit with White Pacific all costs of registration with the NASD, registration with the State of California and any other states in which the Independent Contractor may conduct business, fingerprinting processing and, if applicable, the Temporary Agent Transfer Fee. Independent Contractor shall also be responsible, as may be appropriate, for other costs associated with his/her business such as state examination fees. Independent Contractor shall pay White Pacific an administrative fee in the amount of $125.00 per month in which the Independent Contractor's earned gross commissions do not exceed two thousand dollars ($2,000.00) during such month. Such administrative fee shall be due and payable by the Independent Contractor on or before the fifth (5th) business day of the month following the month in which the earned gross commissions do not exceed $2,000.00.

17.  *Complaints. Independent Contractor agrees and warrants that he/she will contact White Pacific, in writing, within 24 hours of receiving any customer complaint, objection, inquiry, whether oral or otherwise, regarding any brokerage activity of Independent Contractor, as contemplated herein, or any contact, proceeding, or inquiry from any state or federal entity or regulatory organization during the term of this Agreement.*

18.  Term of Agreement. The Agreement shall be for a period of one (1) year from the date hereof and shall automatically renew upon these terms and provisions, or upon any terms or provisions then agreed upon, in writing, by the parties hereto. Either party may terminate this Agreement for any reason upon giving thirty (30) days' notice of termination to the other. Should either party breach any provision of this Agreement, the other may terminate this Agreement immediately by giving notice to the other.

19.  Notice. Termination under this Agreement shall be deemed given on the day mailed or delivered. If mailed to White Pacific, it shall be addressed to the principal office of White Pacific, attention President. If mailed to the Independent Contractor, it shall be addressed to his/her last known address as shown on the records of White Pacific.

Notice to White Pacific shall be at the following address, unless otherwise instructed:

White Pacific Securities, Inc.
Attention: President
301 Mission Street, 5th Floor
San Francisco, CA 94105-2243
Telephone: 415.597.6850

*Independent Contractor Agreement*          7          Independent Contractor Initials: _DR_

094

Fax:    415.543.6972

20.    Arbitration of Customer Disputes. Independent Contractor hereby represents and warrants to White Pacific that all new customer accounts opened by Independent Contractor shall, in all events, require the binding arbitration of disputes between such customer and White Pacific before the NASD or any exchange of which White Pacific may be a member. Independent Contractor may, but is not required to, use the White Pacific brokerage account application (New Account Application) to fulfill this provision.

21.    Allocation of Responsibility. Errors, misunderstandings or controversies, except those specifically covered in this Agreement, between Independent Contractor's customer or White Pacific and Independent Contractor, his/her agents or his/her employees (if applicable), which shall arise out of the acts or omissions Independent Contractor, his/her agents or his/her employees, shall be Independent Contractor's responsibility and liability and shall be allocated accordingly. White Pacific will only be responsible for the acts of its employees, and will take such reasonable actions as may be necessary or appropriate and consistent with sound business practices of the securities industry to correct or adjust errors, misunderstandings or controversies arising out of the acts or omissions of its employees, provided that Independent Contractor's customer has not been unduly enriched, in which case Independent Contractor shall be financially responsible.

22.    **Independent Contractor's Indemnification of White Pacific. Independent Contractor, through his/her direct or indirect acts, omissions, or generally for those whom he/she supervises and/or otherwise controls, without limitation, shall be responsible for all demands, liabilities, losses, expenses and costs (including arbitration costs and awards and legal fees and expenses related to White Pacific's defense of any such claim), debts, costs, errors or expenses, incurred by White Pacific, or its clearing agent, by way of Independent Contractor's brokerage business, for his/her customer accounts or otherwise, as well as for the defense of any action or claim, real or threatened, either in court or before any regulatory or self-regulatory body, including the Pacific or New York Exchanges or the NASD, against him/her and/or White Pacific as a result of his/her securities or related business activity contemplated hereunder. Independent Contractor hereby agrees and shall indemnify and hold White Pacific harmless from any and all settlement, adverse judgment, joint or several, ruling or decision thereon, including reasonable legal fees and costs incurred in connection with the investigation and/or defense of such matter. Independent Contractor agrees that such reimbursement shall be in lawful monies of the United States of America, or in negotiable securities, and may be obtained directly by White Pacific, without further notice to the Independent Contractor, from any income source, whether in-state or out, including monies due Independent Contractor in compensation, future or otherwise, and/or other earned, future or otherwise, but undistributed brokerage commissions derived or due from Independent Contractor's activity as an Registered Representative of White Pacific,**

or other assets or accounts held by White Pacific for Independent Contractor, and/or any income or monies that may be received or controlled by Independent Contractor, in any capacity, regardless of domicile, residency or employment status. Independent Contractor acknowledges that at no time has (or will) White Pacific offered (offer) any legal or tax advice to him/her during the term of this Agreement.

*Independent Contractor Agreement*          9          Independent Contractor Initials: _DR_

23.     <u>Complete Agreement</u>. This Agreement constitutes the complete, exclusive, and final expression of the agreement between the parties with respect to the subject matter herein, and replaces and supersedes all prior written and oral agreements, discussions, understandings or statements by, and between, the parties hereto. This Agreement, or any provision hereof, may only be amended or waived by a writing signed by an authorized person representing both parties.

24.     <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

25.     <u>Interpretation</u>. In the event any claim is made by any party relating to any conflict, omission, or ambiguity in this Agreement, no presumption or burden of proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by, or at the request of, a particular party or its counsel.

26.     <u>Disputed Matters: Arbitration, Governing Law and Jurisdiction</u>. Independent Contractor agrees to arbitrate any dispute, claim or controversy that may arise between Independent Contractor and White Pacific that is required to be arbitrated under the rules, constitutions or by-laws of the NASD as may be amended from time to time and that any arbitration award rendered may be entered as a judgment in any court of competent jurisdiction. In the event that a court of competent jurisdiction determines that any dispute, claim or controversy between Independent Contractor and White Pacific is not required to be arbitrated, each party consents to the exclusive jurisdiction of the state and federal courts sitting in the City and County of San Francisco, State of California in any civil action.

27.     <u>Severability</u>. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement shall not be affected thereby.

28.     <u>Attorney Fees</u>. In the event any dispute among the parties should result in litigation or arbitration, the prevailing party in such a dispute shall be entitled to recover from the non-prevailing party all reasonable fees, costs, expenses of enforcing any right of the prevailing party, including, without limitation, reasonable attorneys' fees and expenses.

29.     <u>Waiver</u>. The waiver of any provision or breach of this Agreement in any instance or instances shall not constitute a waiver or a release of any other provision or breach of this Agreement in any other instance or instances.

30.    <u>Fair Credit Reporting Act Notification</u>. With the enactment of "The Fair Credit Reporting Act," White Pacific is required to notify an applicant when a character/credit inquiry is made. In compliance with this guideline, this is to inform you that as part of our procedure in processing your NASD registration application, an investigative report may be made whereby information is obtained through personal interviews with third parties, such as business associates or others with whom you are acquainted. This inquiry includes information as to your personal character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.

## INDEPENDENT CONTRACTOR

Signature _____        Date __12/14/00_____

Print Name __DENISE REED_____

## WHITE PACIFIC SECURITIES, INC.

Signature _____        Date __5/14/01_____

Print Name __Stephen C. Lee_____

*Independent Contractor Agreement*            11            Independent Contractor Initials: _DR_

EXHIBIT B

**Award**
**NASD Dispute Resolution**

In the Matter of the Arbitration Between:
Denise R. Reed, Claimant v. White Pacific Securities, Inc. and Roy L. Panelli, Respondents

Case Number:  04-03449                    Hearing Site:  San Francisco, California

Nature of the Dispute:  Associated Person vs. Member and Associated Person

## REPRESENTATION OF PARTIES

For Claimant:

Thomas C. Frost, Esq.
Shustak & Partners
San Diego, California

For Respondents:

Michael Bolgatz, Esq.
Berkeley, California

## CASE INFORMATION

Statement of Claim filed:  May 4, 2004

First Amended Statement of Claim filed:  January 12, 2007

Claimant's Arbitration Brief filed on or about:  April 9, 2007

Claimant's Uniform Submission Agreement filed:  June 28, 2004

Statement of Answer of Respondents White Pacific Securities, Inc. ("White Pacific") and Roy L. Panelli filed:  March 18, 2005

Respondents' Answer to the First Amended Statement of Claim filed:  March 2, 2007

Respondents' Arbitration Brief filed:  none

## CASE SUMMARY

In her Amended Statement of Claim, Denise R. Reed ("Claimant") alleged that White Pacific Securities, Inc. and Roy L. Panelli ("Respondents") breached the terms of their Independent Contractor Agreement and the implied covenant of good faith and fair dealing.  Claimant also alleged that Respondents defamed her and were negligent.

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 2 of 8

The claims involved the reporting of several events concerning Claimant to the Central Registration Depository ("CRD").

Respondents denied Ms. Reed's allegations of wrongdoing and denied any liability to her.

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested:
1. Damages in the amount of $500,000.00; and
2. Punitive damages in the amount of $500,000.00.

In the First Amended Statement of Claim, Claimant requested:
1. Unspecified compensatory damages;
2. An Award directing NASD Regulation to properly expunge and amend Ms. Reed's CRD record, in accordance with the evidence presented at the hearing; and
3. Attorney fees, expenses and costs.

In the Answer, Respondents requested:
1. Claimant take nothing by virtue of her Statement of Claim;
2. The claim be dismissed with prejudice; and
3. They be awarded arbitration fees, expenses, and reasonable attorneys' fees incurred in defending this action.

In the Answer to the First Amended Statement of Claim, Respondents requested:
1. Dismissal of Claimant's Claim in its entirety;
2. That Respondent Panelli's CRD record should be ordered expunged; and
3. That all fees and costs should be awarded against Claimant.

## OTHER ISSUES CONSIDERED AND DECIDED

Respondents did not file with NASD Dispute Resolution ("NASD-DR") properly executed submissions to arbitration but are required to submit to arbitration pursuant to the NASD Code of Arbitration Procedure ("the Code") and, having answered Claimant's Claim, appeared and testified at the hearing, are bound by the determination of the Panel on all issues submitted.

On December 16, 2004, Claimant and Claimant's counsel signed a Waiver Agreement expressly waiving any and all rights and benefits under California Civil Code Section 1542 and the California Ethical Standards for Neutral Arbitrators.

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 3 of 8

Pursuant to the Code of Arbitration Procedure IM-10100 the waiver of the Claimant shall constitute and operate as a waiver for all member firms and associated persons (including terminated or otherwise inactive member firms or associated persons) against whom the Claim has been filed.

On January 22, 2005, Claimant filed a Motion for Consideration of Remedial Action Against Respondents in Accordance with NASD Code Rule 10314(b)(2)(C) requesting that Respondents be barred from presenting any matter, arguments, or defenses at the hearing.  The Panel denied the Motion.

During the pre-hearing telephonic conference held on December 5, 2006, the Panel permitted Claimant to file an Amended Claim.

On April 16, 2007, Respondents moved to Dismiss Claimant's claims based upon the defenses of absolute privilege and release of claims.  The Panel denied the Motion.

The parties agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## FINDINGS AND CONCLUSIONS

**Liability**

1.    Respondents' White Pacific Securities, Inc.'s and Roy L. Panelli's maintenance of Claimant's CRD record was negligent.  All other claims against Respondent Roy L. Panelli are denied and dismissed.  Further references to "Respondent" shall refer only to White Pacific Securities, Inc.

2.    Respondent breached its duties implied in the Independent Contractor Agreement to accurately report and maintain Claimant's CRD system records.

3.    Respondent did not breach the implied covenant of good faith and fair dealing.

4.    Respondent's U-5 filing reporting that Claimant was convicted of a crime was defamatory.  However, the communication of that defamatory filing was privileged.

**Damages**

1.    Claimant's proffered evidence of damages was speculative, remote and insufficient to support an award of damages in this case.

2.    Claimant is the prevailing party in this arbitration.

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 4 of 8

## AWARD

After considering the pleadings, testimony, and evidence presented at the hearing, and the post-hearing submissions, the Panel decided in full and final resolution of the issues submitted for determination as follows:

1.      Claimant's request for compensatory damages is denied.

2.      Claimant's request for punitive damages is denied.

3.      Claimant's request for expungement is granted. Accordingly, the Panel recommends the Expungement of the following disclosures on Claimant's U-4, U-5 and CRD records based upon the accompanying affirmative findings of fact, with the understanding that pursuant to NASD Notice to Members 04-16, and except for the defamatory findings in ¶¶ f and g below, Claimant must obtain confirmation from a court of competent jurisdiction before the CRD will execute the Expungement directive:

   a. Occurrence 597302, CRD System Report as of 04/04/2007 at p. 19: This is a criminal disclosure reported on Claimant's U-4 form regarding felony vandalism and aggravated assault charges. The occurrence stems from an affirmative response to Question 23A.(1)(b) on Claimant's Form U-4. Both charges have been dismissed by the Tennessee State Court on April 16, 2001. The Panel finds that based upon the May 22, 2007 Tennessee Court Order of Expungement, and pursuant to NASD Rule 2130(3), the information is clearly erroneous as stipulated by the Parties.

   b. Occurrence 1187925, CRD System Report as of 04/04/2007 at p. 20: This is an internal review disclosure reported on Claimant's U-5 form based on a customer complaint alleging unacceptable conduct. This occurrence stems from an affirmative response to Question 7E.3.(b) on Claimant's U-5 form. The Panel finds pursuant to NASD Rule 2130(3) that the information is clearly erroneous as stipulated by the Parties because the complaint was not customer-initiated and was not investment-related.

   c. Occurrence 1154636, CRD System Report as of 04/04/2007 at p. 22: This is a customer complaint disclosure reported on Claimant's U-4 form in response to Question 14I.(3)(a) related to the same circumstances set forth in ¶ b above. The Panel finds pursuant to NASD Rule 2130(3) that the information is clearly erroneous as stipulated by the Parties.

   d.  Occurrence 1187922, CRD System Report as of 04/04/2007 at p. 26: This is a
       regulatory action disclosure reported on Claimant's U-5 form initiated by NASD
       regarding fraud.  The Panel finds pursuant to NASD Rule 2130(3) that the
       information was not securities related and is clearly erroneous as stipulated by
       the Parties.

   e.  Occurrence 1187923, CRD System Report as of 04/04/2007 at p. 26: This is an
       investigation disclosure reported on Claimant's U-5 form related to the
       circumstances referred to in ¶¶ f and g below.  The Panel finds pursuant to
       NASD Rule 2130(3) that the information was resolved at civil trial in Nevada and
       is clearly erroneous as stipulated by the Parties.

   f.  Occurrence 1186065, CRD System Report as of 04/04/2007 at p. 24: This is a
       criminal conviction and misdemeanor fraud disclosure erroneously reported on
       Claimant's U-4 form in response to Question 14B.(1)(a). The Panel finds this
       occurrence to have been a civil matter that was not investment or securities
       related and that the information in the CRD system is defamatory.

   g.  Occurrence 1187928, CRD System Report as of 04/04/2007 at p. 27: The Panel
       finds this occurrence to have been a civil matter and that the information in the
       CRD system is defamatory. This is a termination disclosure reported in response
       to Questions 7A, 7B, 7C.3, 7D, 7E.1.3, 7E.3 and 7F.1 and 2. on Claimant's U-5
       form erroneously alleging that Claimant was terminated based on a
       misdemeanor-criminal fraud conviction. The Panel finds this occurrence to have
       been a civil matter and that the information in the CRD system is defamatory.

4.     Claimant's request for attorney fees and other costs and expenses is granted
pursuant to the terms and conditions of the Independent Contractor Agreement as
follows:

   a.  Attorney's fees in the amount of $158,797.10 are awarded to Claimant assessed
       against Respondent White Pacific Securities, Inc.

   b.  Costs and expenses in the amount of $5,228.70 are awarded to Claimant
       assessed against Respondent White Pacific Securities, Inc.

5.     Respondent White Pacific Securities, Inc. is liable to and shall pay Claimant the
sum of $375.00 as reimbursement for Claimant's filing fee.

6.     Respondent Roy L. Panelli's request that the above-captioned arbitration be
expunged from his CRD record is denied.

7.     All other relief requested and not expressly granted is denied.

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 6 of 8

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
NASD-DR received or will collect the non-refundable filing fees for each claim as follows:

      Initial claim filing fee                           = $375.00

### Member Fees
Member fees are assessed to each member firm that is either a party in the matter or an employer of a respondent associated person at the time of the events that gave rise to the dispute, claim, or controversy.   Accordingly, White Pacific is a party and the following fees are assessed:

| | |
|---|---|
| Member Surcharge | = $2,250.00 |
| Pre-Hearing Process Fee | = $  750.00 |
| Hearing Process Fee | = $4,000.00 |
| Total Member Fees | = $7,000.00 |

### Adjournment Fees
The following adjournment fees are assessed:

The Panel granted Claimant's request to postpone the September 6-8, 2005, hearing dates and assessed the $1,200.00 postponement fee to Claimant.

The Parties agreed to postpone the May 22-24, 2006, hearing dates in order to mediate their dispute through NASD-DR.   Pursuant to Rule 10403(b) of the Code, NASD-DR waived the postponement fee.

### Forum Fees and Assessments
The Panel assessed forum fees for each session conducted or each decision rendered on a discovery-related motion on the papers.   A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

(2) Decisions on discovery-related motions on the papers
with a single arbitrator @ $200.00 per decision          =     $400.00
Respondents submitted two discovery-related motions

(1) Pre-hearing conference session with a single arbitrator
@ $450.00/session                               =     $450.00
Pre-hearing conference:    April 13, 2007         1 session

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 7 of 8

(2) Pre-hearing conference sessions with the Panel
@ $1,200.00/session                                                        =    $2,400.00
Pre-hearing conferences:   February 16, 2005         1 session
                           December 5, 2006          1 session

(6) Hearing sessions @ $1,000.00/session                                   =    $6,000.00
Hearing Dates:             April 16, 2007            2 sessions
                           April 17, 2007            2 sessions
                           April 18, 2007            2 sessions

**Total Forum Fees**                                                       =    **$9,250.00**

The Panel assessed $100.00 of the forum fees to Claimant Denise R. Reed in
connection with the Chairperson's decision of March 28, 2006, regarding a discovery-
related motion.

The Panel assessed $9,150.00 of the forum fees to Respondent White Pacific.

## Fee Summary

1.  Claimant Denise R. Reed is charged with the following fees and costs:

| | |
|---|---|
| Initial Filing Fee | = $    375.00 |
| Adjournment Fee | = $  1,200.00 |
| Forum Fees | = $    100.00 |
| Total Fees | = $  1,675.00 |
| Less Payments | = $( 2,775.00) |
| **Refund Due Claimant** | = $( 1,100.00) |

2.  Respondent White Pacific is charged with the following fees and costs:

| | |
|---|---|
| Member Fees | = $  7,000.00 |
| Forum Fees | = $  9,150.00 |
| Total Fees | = $ 16,150.00 |
| Less Payments | = $( 7,000.00) |
| Less Unused Mediation Deposit | = $(   350.00) |
| **Balance Due NASD-DR** | = $  8,800.00 |

All balances are payable to NASD Dispute Resolution and are payable upon the receipt
of the Award pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 04-03449
Award   Page 8 of 8

## ARBITRATION PANEL

Sheldon Michaels, Esq.          -        Public Arbitrator, Presiding Chair
Barbara M. Anscher, Esq.        -        Public Arbitrator
Jane F. Gundermann              -        Non-Public Arbitrator

**Concurring Arbitrators' Signatures**

_Sheldon Michaels_                        _June 4 2007_
Sheldon Michaels, Esq.                   Signature Date
Chair, Public Arbitrator


_____                  _____
Barbara M. Anscher, Esq.                 Signature Date
Public Arbitrator


_____                  _____
Jane F. Gundermann                       Signature Date
Non-Public Arbitrator

                                         _6/5/07_
                                         Date of Service

NASD Dispute Resolution
Arbitration No. 04-03449
Award  Page 8 of 8

## ARBITRATION PANEL

Sheldon Michaels, Esq.           -         Public Arbitrator, Presiding Chair
Barbara M. Anscher, Esq.         -         Public Arbitrator
Jane F. Gundermann               -         Non-Public Arbitrator


## Concurring Arbitrators' Signatures


Sheldon Michaels, Esq.                          Signature Date
Chair, Public Arbitrator


*Barbara M Anscher*
Barbara M. Anscher, Esq.                        6-1-07
Public Arbitrator                               Signature Date


Jane F. Gundermann                              Signature Date
Non-Public Arbitrator

                                                6/5/07
                                                Date of Service

STATEMENT OF ACCOUNT

NASD Dispute Resolution
300 South Grand Avenue, Suite 900
Los Angeles, CA  90071

As of:  06/05/2007

TO: Thomas C. Frost, Esq.
    Shustak & Partners
    401 West "A" Street
    Suite 2330
    San Diego, CA  92101

FOR: Denise R. Reed (AP)
     204 Marsh Ave.
     Suite 200
     Reno, NV  89509

Invoice#: 04-03449-298-SF

Case Number: 04-03449
        Name: Denise R. Reed  v. White Pacific Securities, Inc. and
              Roy L. Panelli

| Date | Multiple Party | Description | Fees Owed | Credits | Check No. | Check Date |
|------|------|------|------|------|------|------|
| 05/11/2004 | | Check No: 7985269757 | | $575.00 | | |
| 05/11/2004 | | Check No: 7985269756 | | $1,000.00 | | |
| 05/13/2004 | | Filing Fee - Initial Claim | $375.00 | | | |
| 05/13/2004 | | Hearing Session Deposit - Initial Claim | $1,200.00 | | | |
| 07/27/2005 | | Postponement Fee | $1,200.00 | | | |
| 08/08/2005 | | Check No: 1155 | | $1,200.00 | | |
| 06/05/2007 | | Reduced: Hearing Session Deposit - Initial Claim | -$1,200.00 | | | |
| 06/05/2007 | | Forum Fee | $100.00 | | | |
| 06/05/2007 | | Filing Fee - Initial Claim Partial Refun | | -$1,100.00 | | |
| 05/08/2006 | | Mediation Administrative Fee | $250.00 | | | |
| 05/22/2006 | | Check No: 1018 | | $250.00 | | |
| 07/13/2006 | | Mediator Deposit Fee | $1,400.00 | | | |
| 08/29/2006 | | Check No: 1051 | | $1,400.00 | | |
| 10/31/2006 | | Reduced: Mediator Deposit Fee | -$1,400.00 | | | |
| 10/31/2006 | | Mediator Session Fee | $1,050.00 | | | |
| 06/05/2007 | | Mediator Deposit Fee Refund | | -$350.00 | | |

Mediation Fee Total:            $1,300.00
Arbitration Fee Total:          $1,675.00
Total Fees:                     $2,975.00
Credits To Date:                            $4,425.00
Credits By Others:                              $.00
Less Credits To Others:                         $.00
Less Refunds:                               $1,450.00

Balance Due:                    $.00


Please Make Check Payable to:

NASD Dispute Resolution
W9530
P.O. Box 7777
Philadelphia, PA  19175-9530

MDO: RF02A



## Proof of Service

State of California, County of Los Angeles

I am employed in the county of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is:

**NASD Dispute Resolution**
**300 South Grand Avenue, Suite 900**
**Los Angeles, California 90071**

On June 5, 2007, I served the following documents described as:

**Award, Cover Letters, and Invoice Statement for Arbitration Case No.** 04-03449 on the interested parties in this action by placing the true copies thereof enclosed in the sealed envelops as follows:

Howard M. Hoffman, Esq., Law Offices of Howard M. Hoffman, 8880 Cal Center Drive, Suite 165, Sacramento, CA 95826. Fax: 916-368-5902.

David J. Romanski, Esq., DLA Piper US LLP, 153 Townsend St., #800, San Francisco, CA 94107-1957. Fax: 415.836.2501.

☒    I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☐    By Personal Service, I caused such envelope to be delivered by hand to the individuals at the addressee(s) listed.

☐    By overnight courier, I caused the above-referenced documents to be delivered to an overnight courier service (Federal Express), for delivery to the above addressees.

☒    By facsimile machine, I caused the above-referenced documents to be transmitted to the above-named persons at the numbers above.

☒    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    (FEDERAL) I declare that I am employed in the office of a member of the bar on this court at whose direction the service was made.

Executed this June 5, 2007, at Los Angeles, California.

_Maria Orozco_
Maria D. Orozco

EXHIBIT C

1 │ ROBERT T. SULLWOLD (SBN 88139)
  │ JAMES A. HUGHES (SBN 88380)
2 │ SULLWOLD & HUGHES
  │ 235 Montgomery Street, Suite 730
3 │ San Francisco, CA  94104
  │ (415) 263-1850
4 │ (415) 989-9798 FAX

5 │ Attorneys for Respondent
  │ WHITE PACIFIC SECURITIES, INC.

6

7

8                          BEFORE THE

9        NATIONAL ASSOCIATION OF SECURITIES DEALERS

10

11 │ DENISE R. REED                    Case No.: 04-03449

12 │              Claimant(s),

13 │      v.                           **MOTION TO MODIFY AWARD AS TO**
                                       **ATTORNEYS' FEES**

14 │ WHITE PACIFIC SECURITIES, INC.
   │ and ROY L. PANELLI,

15 │              Respondent(s).

16

17                       **I. INTRODUCTION**

18        Respondent White Pacific Securities, Inc. ("White Pacific"), through its newly associated

19   counsel, brings this motion asking the panel to modify the arbitration award issued on June 5, 2007 to

20   reduce, if not eliminate, the award of attorneys' fees to claimant Denise R. Reed ("claimant").  The basis

21   for this motion is that, under California law as applied to the facts of this case, claimant is not entitled to

22   recover the attorneys' fees she seeks.

23                    **II. STATEMENT OF THE CASE**

24        This case involved the accuracy of the reporting by White Pacific of certain events on

25   claimant's Forms U-4 and U-5 filed with the Central Registration Depository ("CRD").  In her Amended

26   Statement of Claim, claimant asserted causes of action against White Pacific for defamation; breach of

27   contract (specifically, the Independent Contractor Agreement between the parties); breach of the implied

28

                                          1

1 | covenant of good faith and fair dealing, and negligence.[1] The Amended Statement of Claim did not

2 | specify the amount of damages claimant sought, but in her original Statement of Claim claimant asked

3 | for $500,000 in compensatory and $500,000 in punitive damages.

4 |       The arbitration hearing took place on April 16, 17, and 18, 2007.  On June 5, 2007, the

5 | NASD staff transmitted the decision reached by the panel.  In the award, the arbitrators found that White

6 | Pacific's maintenance of claimant's CRD record was negligent; it also found that White Pacific had

7 | breached a duty "implied in the Independent Contractor Agreement" to accurately report and maintain

8 | claimant's CRD records.  The panel also found, however, that White Pacific did not breach the implied

9 | covenant of good faith and fair dealing.  Likewise, it found that the U-5 filing cited by claimant, though

10 | defamatory, was privileged.  And it found that the evidence of damages offered by claimant was

11 | speculative and remote and therefore insufficient to support an award of damages.

12 |       Having made these findings, the panel denied claimant's request for both compensatory

13 | and punitive damages.  It granted her request for expungement of her CRD as to seven items, subject to

14 | claimant's obtaining judicial confirmation.  It also granted claimant's request for attorneys' fees

15 | "pursuant to the terms and conditions of the Independent Contractor Agreement" in the full amount --

16 | $158,797.10 – she sought.

### III. ARGUMENT

#### A.    California Law Regarding Attorneys' Fee Awards

19 |       The basic principles governing an award of attorneys' fees under California law are well-

20 | established.  "[A]s a general proposition each party to a litigation must pay his or her own attorneys

21 | fees." Baker v. Pratt, 176 Cal.App.3d 370, 378 (1986).  This rule is codified in Code of Civil Procedure

22 | section 1021, which provides that, "Except as attorney's fees are specifically provided for by statute, the

23 | measure and mode of compensation of attorneys and counselors at law is left to the agreement, express

24 | or implied, of the parties; . . "  One such statute providing for attorneys' fees to a successful litigant is

---

[1] The Amended Statement of Claim also identified "expungement" as a cause of action.  Expungement, however, describes a remedy, not a claim for relief.

2

1    Civil Code section 1717, which permits the recovery of attorneys' fees in contract actions. The statute

2    provides:

3        In any action on a contract, where the contract specifically provides that attorney's fees
         and costs, which are incurred to enforce that contract, shall be awarded either to one of
4        the parties or to the prevailing party, then the party who is determined to be the party
         prevailing on the contract, whether he or she is the party specified in the contract or not,
5        shall be entitled to reasonable attorney's fees in addition to other costs.

6        From reading the Award, it appears to newly associated counsel for White Pacific that the

7    panel in this case was familiar with these well-established principles and that it based its award of

8    attorneys' fees to claimant on Civil Code section 1717. (No other statutory basis for an award of

9    attorneys' fees exists in this case). It does *not* appear, however, that the parties provided the panel with

10   sufficient guidance about the standards to be applied in making an award of attorneys' fees under that

11   statute. At least four such standards are relevant in this case:

12       *First,* attorneys' fees may be awarded under Civil Code section 1717 only if the court –

13   or the arbitrator – determines that one party to the litigation is the "party prevailing under the contract."

14   The statute defines the quoted phrase as "the party who recovered a greater relief in the action on the

15   contract." Civ. Code § 1717(b)(2). The court may also determine that there is *no* prevailing party. Id.

16   In "deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief

17   awarded on the contract claim or claims with the parties' demands on those same claims and their

18   litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources."

19   Hsu v. Abbara, 9 Cal.4th 863, 876 (1995).

20       *Second,* "Where a cause of action based on the contract providing for attorney's fees is

21   joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees

22   under section 1717 only as they relate to the contract action." Reynolds Metals Co. v. Alperson, 25

23   Cal.3d 124, 129 (1979). At the same time, "Attorney's fees need not be apportioned when incurred for

24   representation on an issue common to both a cause of action in which fees are proper and one in which

25   they are not allowed." Id. at 129-130.

26       *Third,* in determining the *amount* of attorneys' fees to be awarded to the party prevailing

27   on a contract claim, the court – or the arbitrator – ordinarily begins by computing so-called "lodestar" –

28   i..e, the "number of hours reasonably expended multiplied by the reasonable hourly rate." PLCM Group

                                            3

1 | v. Drexler. 22 Cal.4th 1084, 1095 (2000). Under the lodestar method, the court should exclude from the

2 | computation hours billed that were excessive, redundant, or otherwise unnecessary to achieve the result.

3 | Harman v. City and County of San Francisco, 136 Cal.App.4th 1279, 1310 (2006). See Meister v.

4 | Regents of University of California, 67 Cal.App.4th 437, 455 (1998) (approving trial court's exclusion

5 | of time spent opposing motions on grounds it was unnecessary to secure result obtained in litigation);

6 | Levy v. Toyota Motor Sales, U.S.A., Inc., 4 Cal.App.4th 807, 815-816 (1992) (approving reduction by

7 | trial court of fee request to eliminate duplicative charges and time spent on unnecessary or unsuccessful

8 | motions). In addition, under the "lodestar" method, the court should exclude from the computation

9 | hours billed for work on claims or issues on which the plaintiff did not prevail. See Harman v. City and

10 | County of San Francisco, 136 Cal.App.4th 1279, 1316-1317 (2006) (remanding case with directions to

11 | "exclude hours expended on claims that are unrelated to the claim of damages on which [plaintiff]

12 | succeeded at trial"); Boquilon v. Beckwith, 49 Cal.App.4th 1697, 1722-1723 (1996) (affirming trial

13 | court's reduction of attorneys' fees by half to eliminate time spent on fraud claim that trial court

14 | rejected).

15 |     *Fourth,* computation of the "lodestar" amount does not end the analysis. After

16 | computing the "lodestar," the court "shall consider whether the total award so calculated under all of the

17 | circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717

18 | award so that it is a reasonable figure." PLCM Group v. Drexler, 22 Cal.4th 1084, 1095-1096 (2000),

19 | quoting Sternwest Corp. v. Ash, 183 Cal.App.3d 74, 77 (1986). In determining whether to adjust the

20 | "lodestar," the court should consider factors such as "the nature of the litigation, its difficulty, the

21 | amount involved, the skill required in its handling, the skill employed, the attention given, the success or

22 | failure, and other circumstances in the case." Id., 22 Cal.4th at 1096, quoting Melnyk v. Robledo, 64

23 | Cal.App.3d 618, 623-624 (1976). In particular, the court should adjust the "lodestar" *downward* if the

24 | plaintiff obtained only "partial" success in the litigation. See Harman v. City and County of San

25 | Francisco, 136 Cal.App.4th 1279, 1316-1317 (2006) (remanding case with directions to "reduce the

26 | award to reflect the limited nature of [plaintiff's] relief in comparison with the scope of the litigation as

27 | a whole"). Sokolow v. County of San Mateo, 213 Cal.App.3d 231. 247-251 (1989) (remanding case for

28 | determination of amount of "reasonable" attorneys' fees reflecting "the relative extent or degree of

4

1   [plaintiffs'] success in obtaining the results sought" in case where plaintiffs failed to obtain all of their

2   litigation goals); <u>Californians for Responsible Toxics Management</u> v. <u>Kizer</u>, 211 Cal.App.3d 961, 973-

3   975 (1989) (approving trial court's reduction of attorneys' fee request to 35% of lodestar based on

4   "relative lack of success" of plaintiff's suit).

5          **B.    Application of These Standards Mandates Modification of the Award of
              Attorneys' Fees to Claimant in this Case**

6

7          In this case, claimant submitted a printout showing that claimant's counsel had billed a

8   total of $158,979.10 in attorneys' fees in this proceeding. The panel awarded the entire amount. Under

9   the standards discussed above, however, claimant is not entitled to an award of the entire amount of

10  attorneys' fees she seeks.

11         *First*, the panel found for claimant on the issue of liability but awarded her neither

12  compensatory nor punitive damages. Under similar circumstances, the California Court of Appeal held

13  that the *defendant*, not the plaintiff, was the prevailing party entitled to an award of attorneys' fees.

14  <u>Childers</u> v. <u>Edwards</u>, 48 Cal.App.4th 1544 (1996). In that case, real estate purchasers sued their sellers

15  and realtor for fraud and negligent misrepresentation. After a bench trial, the court found that the

16  defendants indeed had made misrepresentations but concluded that the plaintiff had not proved out-of-

17  pocket damages. Citing an attorneys' fee clause in the real estate purchase contract, the defendants

18  moved for an award of attorneys' fees. The trial court denied the request, but the Court of Appeal

19  reversed, holding that, as a matter of law, the defendants were the "prevailing parties" in the action. 48

20  Cal.App.4th at 1549.

21         White Pacific is aware that, here, the Award specifically states that the claimant is the

22  prevailing party, but it urges the panel to reconsider that finding in light of <u>Childers</u>: claimant did not

23  obtain any monetary relief against White Pacific, nor did the panel order White Pacific to take, or refrain

24  from taking, any action. The panel did grant claimant's request for expungement of her CRD, but this is

25  not the same as awarding monetary or injunctive relief *against White Pacific*. At the least, the outcome

26  of the case was mixed, and neither party should be deemed to have prevailed.

27         *Second,* the Amended Statement of Claim set forth causes of action for defamation,

28  breach of written contract, breach of the implied covenant of good faith and fair dealing, and negligence.

1    The panel found for claimant on the breach of written contract and negligence claims, but for White

2    Pacific on the defamation and breach of covenant claims.  Assuming the panel reaffirms its finding that

3    claimant prevailed on the claim for breach of contract despite having been denied damages, she is

4    entitled under Civil Code section 1717 to recover attorneys' fees "only as they relate to the contract

5    action." Reynolds Metals Co. v. Alperson, 25 Cal.3d 124, 129 (1979).  Accordingly, the panel should

6    consider how much of the attorneys' fees billed to claimant related to her claim that White Pacific

7    breached the Independent Contractor Agreement – the contract containing the attorneys' fees clause.  To

8    the extent fees were billed to claimant for her other claims – whether successful or not – they are not

9    recoverable unless the panel finds that the contract and tort issues were so "inextricably intertwined"

10   that apportionment is impossible.   Abdallah v. United Savings Bank, 43 Cal.App.4th 1101, 1111

11   (1996).

12            *Third*, the billing statement submitted by claimant shows that her counsel billed a total of

13   475.80 hours on this matter, of which only 32.75 hours represent the time spent in trial.  It strikes newly

14   associated counsel for White Pacific, who has been trying NASD arbitrations for 28 years, as

15   extraordinary that an experienced claimant's lawyer would need to spend nearly 450 hours working up a

16   case such as this one, which, as counsel understands it, involved the relatively straightforward issue of

17   whether the reporting by White Pacific to the CRD about claimant was accurate.  White Pacific is not

18   suggesting that claimant's counsel padded his bills – but that is not the point: an attorneys' fees award

19   should include compensation only for the hours "necessary" to achieve the ultimate result.  Harman v.

20   City and County of San Francisco, 136 Cal.App.4th 1279, 1316-1317 (2006); Meister v. Regents of

21   University of California, 67 Cal.App.4th 437, 455 (1998); Levy v. Toyota Motor Sales, U.S.A., Inc., 4

22   Cal.App.4th 807, 815-816 (1992).  Moreover, it appears from the billing statement that counsel spent a

23   significant amount of time researching, briefing, and preparing evidence on the issue of damages -- an

24   issue on which the panel found against her.  An attorneys' fee award should not include compensation

25   for hours spent on a claim or issue on which plaintiff did not prevail.  Harman v. City and County of San

26   Francisco, 136 Cal.App.4th 1279, 1316-1317 (2006); Boquilon v. Beckwith, 49 Cal.App.4th 1697,

27   1722-1723 (1996).

28

1    *Finally*, this is a case in which, even if claimant is deemed to be the prevailing party, it

2    cannot be disputed that she succeeded only in part: the panel found White Pacific liable on two claims

3    and not liable on two others, and it awarded no damages, either compensatory or punitive. As discussed

4    above, once the lodestar figure has been computed, the amount should be adjusted to take account of,

5    among other things, the plaintiff's "success or failure," PLCM Group v. Drexler, 22 Cal.4th 1084, 1096

6    (2000), and, where the plaintiff has obtained only partial success, a downward adjustment should be

7    made to reflect her lack of success. Harman v. City and County of San Francisco, 136 Cal.App.4th

8    1279, 1316-1317 (2006); Sokolow v. County of San Mateo, 213 Cal.App.3d 231, 247-251 (1989);

9    Californians for Responsible Toxics Management v. Kizer, 211 Cal.App.3d 961, 973-975 (1989).

10   Indeed, the United States Supreme Court has stated, "[T]he most critical factor in determining the

11   reasonableness of a fee award is the degree of success obtained[:] ... the amount of damages awarded as

12   compared to the amount sought." Farrar v. Hobby, 506 U.S. 103, 114 (1992). Here, claimant originally

13   sought $1 million in compensatory and punitive damages; the panel awarded her zero. It is simply

14   unreasonable to award a claimant who recovered 0% of the damages she sought 100% of her attorneys'

15   fees.

16                                    **III. CONCLUSION**

17        When the panel awarded claimant 100% of the attorneys' fees she sought, it may not

18   have known of all of the standards applicable to such a request under California law. By this motion,

19   White Pacific is attempting to put those standards before the panel. It respectfully requests that the

20   panel review those standards, reconsider its decision in light of them, and modify the award accordingly.

21   DATED: June 27, 2007                       ROBERT T. SULLWOLD
                                                 SULLWOLD & HUGHES
22

23

24                                               _____
25                                                    Robert T. Sullwold
                                                     Attorneys for Respondent
26                                               WHITE PACIFIC SECURITIES, INC.

27

28

                                        7

# PROOF OF SERVICE

1    I am a citizen of the United States, more than eighteen years old and not a party to this action.

2  My business address is Sullwold & Hughes, 235 Montgomery Street, Suite 730, San Francisco,

3  California, 94104.

4    On June 27, 2007, I served the following document(s):

5  • **Motion to Modify Award as to Attorneys' Fees**

6    by causing delivery of the document(s) listed above to the person(s) at the address(es) set forth

7  below, in the manner set forth below:

8
9  | **Thomas C. Frost, Esq.**<br>**Shustak & Partners**<br>**401 West "A" Street, Suite 2330**<br>**San Diego, California 92102** | |
10
11

12  ☐    **U.S. Mail:** by placing the document(s) listed above in a sealed envelope, with First Class
13  postage thereon fully prepaid, and deposited the same in the United States mail at San Francisco, California.

14  ☐    **Electronic Transmission:** by transmitting via e-mail from rts@greenstamps.com during normal
15  business hours, complete and without error on the date indicated below, to the e-mail address set
16  forth above.

17  ☐    **By Hand:** by placing the document(s) listed above in a sealed envelope and delivering to the
18  person(s) listed above personally.

19  ☒    **Overnight Delivery:** by placing the document(s) listed above in an envelope marked for next-
20  day delivery by **Federal Express** to addressee(s) noted above and then sealing the packet, with
delivery fee provided for and delivering to a Federal Express collection box, at San Francisco,
21  California.

22    Executed on June 27, 2007, at San Francisco, California.

23    I declare under penalty of perjury under the laws of the State of California that the foregoing is

24  true and correct.
                                                    _____
25                                                              Robert T. Sullwold

26

27

28

# SHUSTAK & PARTNERS

### A PROFESSIONAL CORPORATION

### 401 WEST "A" STREET
### SUITE 2330
### SAN DIEGO, CALIFORNIA 92101

TELEPHONE: (619) 696-9500
FACSIMILE: (619) 615-5290

────────────

400 PARK AVENUE
NEW YORK, NY 10022
TELEPHONE: (212) 688-5900
FACSIMILE: (212) 688-6151

Jonah A. Toleno
jtoleno@shufirm.com

email@shufirm.com
www.shufirm.com

July 6, 2007

**VIA FACSIMILE/U.S. MAIL**

Derek L. Sorrells
Senior Arbitration Administrator
NASD Dispute Resolution
300 South Grand Avenue
Los Angeles, CA 90071-3135

      Re:    ***Denise Reed v. White Pacific Securities, et al.***
              NASD Case No. 04-02449;  Our File No. 1420.02

Dear Mr. Sorrells:

This letter constitutes claimant Denise Reed's ("Claimant's") response in opposition to Respondent White Pacific's ("Respondent's") Motion to Modify Award as to Attorneys' Fees ("Motion") in the above-referenced matter. Kindly forward this letter to the NASD arbitration panelists assigned to this case at your earliest convenience.

## I.    INTRODUCTION

As you are aware, the above matter was arbitrated before the NASD panelists in San Francisco, California, during the week of April 16, 2007. The NASD served its arbitration award on the parties on June 5, 2007, wherein it awarded Claimant $158,797.00 in attorneys' fees, $5,228.70 for costs and expenses, and $375.00 for filing fees. Respondent filed its Motion on June 27, 2007.

Derek L. Sorrells
Re: Reed v. White Pacific, et al.
July 6, 2007
Page 2

For the reasons set forth below, Respondent's motion fails on its face and must be denied. Furthermore, Respondent's membership should be cancelled or suspended in light of its failure to timely pay the full amount awarded to Claimant on June 5, 2007.

## II.    ARGUMENT

### A.    Respondent's Motion Was Not Timely Filed

This case is subject to the NASD's Code of Arbitration Procedure for Cases Filed Prior to April 16, 2007 (the "Code"). Nowhere in the Code is there a provision for filing a motion before the NASD to modify or reconsider an arbitration award.

California Code of Civil Procedure § 1284 provides that a party may file an application before an arbitrator to correct an award, so long as the application is filed "not later than 10 days after service of a signed copy of the award on the applicant." California courts construe this 10-day deadline strictly. The California "Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. Consequently, courts will indulge every intendment to give effect to such proceedings." *Moncharsh v. Heily & Blase*, 3 Cal.4th1, 9 (1992). See also *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699 (1976); *Victoria v. Superior Court*, 40 Cal.3d 734 (1985).

In this case, Respondent had until June 15, 2007 to file an application to correct the award. Respondent instead untimely filed its Motion to Modify Award as to Attorneys' Fees (which, in actuality, is an "application to correct" subject to C.C.P. § 1284) on June 27, 2007.

Since the Code makes no provision for application to modify an arbitration award, and since Respondent failed to make a timely application to correct the award in accordance with the California Code of Civil Procedure, its Motion is defective on its face. Respondent's request for relief must be denied.

### B.    The Arbitrators' Decision is Final

Section 10330(b) of the Code provides, "Unless the applicable law directs otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to review or appeal." California law echoes this provision. The Supreme Court in *Monarsch, supra*, stated, "The arbitrator's decision should be the end, not the beginning, of the dispute." *Monarsch,* 3 Cal.4th at 10. "Indeed, '[t]he very essence of the term 'arbitration' ... connotes a binding award.'" *Id.* at 9.

Derek L. Sorrells
Re: Reed v. White Pacific, et al.
July 6, 2007
Page 3

There being no provision in the NASD Code for bringing a motion for reconsideration of an award, the Code confers no authority on the panel to modify, correct, or otherwise change its award once it has been decided. Thus, the arbitrators' decision is final.

Further, the parties agreed to a final and binding decision. In Paragraph 26 of the independent contractor agreement between Claimant and Respondent, a copy of which is marked and attached hereto as Exhibit "A", the parties voluntarily agreed that their dispute would be resolved by arbitration before the NASD. "It is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." *Id.* at 9, quoting *Blanton v. Womancare, Inc.*, 38 Cal.3d 396 (1985).

Despite its voluntary agreement to arbitrate this case and receive a final and binding award, Respondent now attempts to modify the award so as to affect the merits of the panel's decision. Under California Civil Procedure Code §1286.6 an application for correction of award would only be granted if:

(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or

(c) The award is imperfect in a matter of form, not affecting the merits of the controversy.

All of Respondent's arguments in its Motion go to the merits of the panel's decision. None of their arguments fall under the provisions of C.C.P. §1286. Accordingly, even if Respondent had timely filed its Motion, it would nonetheless fail in substance.

## C. Respondent's License Should be Cancelled or Suspended for Failure to Timely Pay the Arbitration Award

On July 5, 2007, Respondent's counsel sent NASD Dispute Resolution a letter stating it had mailed to Shustak & Partners (claimant's counsel) a check for $5,603.70, representing the sum of amounts awarded by the arbitration panel for Claimant's costs and filing fees. Respondent indicated that it had deposited $158,797.10, the amount of attorneys' fees awarded by the panel, into an escrow account established with the law firm of Lippenberger, Thompson, Welch, Soroko & Gilbert, LLP.

Section 10330(h) of the applicable NASD Code of Arbitration provides, "All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed

Derek L. Sorrells
Re: Reed v. White Pacific, et al.
July 6, 2007
Page 4

with a court of competent jurisdiction." Pursuant to Article VI, Section 3 of the NASD Bylaws, the NASD may suspend or cancel the membership of any member or the registration of any person in arrears in the payment of any fees, dues, assessments or other charges.

Respondent's payment was due no later than July 5, 2007. Rather than paying the sum of $158,797.10 to Claimant for her attorneys' fees, Respondent merely deposited it into an escrow account. This deposit does not constitute payment as ordered by the arbitration panel. Nor has Respondent filed any motion to vacate the award before any court of competent jurisdiction.

In accordance with Article VI, Section 3 of the NASD Bylaws, Respondent's license should be cancelled or suspended in light of its failure to pay the award or file an appropriate motion to vacate on or before July 5, 2007.

## III.    CONCLUSION

For all of the foregoing reasons, Respondent's Motion to Modify Award as to Attorneys' Fees must be denied, and Respondent's license should be cancelled or suspended for failure to timely pay the award.

Thank you for your attention. We invite you to contact us with any questions you may have in this regard.

Very truly yours,
SHUSTAK & PARTNERS APC

By: Jonah A. Toleno, Esq.

cc:    Robert T. Sullwold, Esq.
       Michael Bolgatz, Esq.
       Denise Reed

EXHIBIT A

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made and entered into as of the date set forth herein below by and between _DENISE R. REED_, ("Independent Contractor"), and White Pacific Securities, Inc., a Nevada corporation, and any and all divisions thereof (collectively "White Pacific"). As the parties desire that the Independent Contractor associate with White Pacific such that Independent Contractor shall conduct his/her own independent securities business and transmit orders for the purchase and sale of securities for which White Pacific may now or hereafter act as broker-dealer, the parties agree as follows:

## AGREEMENT

1.    <u>Associated Person Status.</u> At all times this Agreement is in effect, Independent Contractor agrees to be appropriately licensed and registered in good standing with all appropriate federal, state and self-regulatory and quasi-regulatory organizations to engage in securities transactions as an "Associated Person" within the meaning of Section 3(a)(18) of the Securities Exchange Act of 1934, as amended (Exchange Act), and as a "Registered Representative" within the meaning of Schedule C to Article II of the Bylaws of the National Association of Securities Dealers, Inc. ("NASD").

2.    <u>Compliance with All Applicable Rules regarding the Brokerage Industry.</u> It is specifically understood by the parties hereto that Independent Contractor shall have sole and exclusive direction and control over the manner, method and means of conducting his/her securities business. Notwithstanding, Independent Contractor represents and warrants that during the term of registration or association with White Pacific, he/she shall operate and conduct his/her brokerage business in strict compliance with the rules and regulations of the Securities Act of 1933, as amended, (Exchange Act), the Investment Company Act of 1940, as amended, the Investment Advisors Act of 1940, as amended, all other acts or regulations administered by the Securities and Exchange Commission, the rules of the NASD, and all other statutes and regulations of the United States of America or any state authority responsible for the regulation of securities or any regulatory, self-regulating organization or body of which White Pacific may be a member or on which a transaction or trade may be executed or conducted. These rules and regulations will be referred to in this Agreement as "Applicable Regulations and Rules." Independent Contractor shall obtain and maintain all such licenses, state or otherwise, and other appropriate registration(s) as may be mandated by the type and kind of his/her independent brokerage operation.

*Independent Contractor Agreement*          1          Independent Contractor Initials: _DR_

3. <u>Source of Customer</u>. Independent Contractor does not and will not rely on White Pacific to provide customers, and desires to solicit and/or receive orders for securities transactions as sole proprietor independent business under his/her sole and exclusive control such that Independent Contractor shall at all times have and maintain exclusive direction and control over the manner, method and means of engaging in the business and operation of the offering, solicitation or receipt of securities transaction orders.

4. <u>Training</u>. Independent Contractor has previously been an Associated Person under the Exchange Act, or is experienced as such, and does not and will not rely on White Pacific to provide training, except to the extent White Pacific is required to maintain compliance with Applicable Regulations or Rules.

5. <u>Customer Information</u>. Independent Contractor agrees that he/she at all times will comply with Applicable Regulations and Rules by obtaining and maintaining an accurate and current written record of all relevant customer information or any such other information as may be necessary to determine the "suitability" of an investor for any given investment, as that term is understood or interpreted under Applicable Regulations and Rules. Independent Contractor may, but not exclusively, use the White Pacific brokerage account application (New Account Application) to obtain and maintain the information. Independent Contractor agrees that he/she will comply with Applicable Regulations and Rules by knowing, adhering to and maintaining an accurate and current written record of any customer's "investment objectives," or "financial profile," as these terms are commonly understood in the brokerage industry, as a whole, and insuring that all the required forms are appropriately completed and signed by the customer, as the case may be, and that the original is on file with either White Pacific or its clearing agent, as appropriate. Independent Contractor further represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by not soliciting, accepting or placing orders, including unsolicited orders, for sales or securities unless they are suitable for that customer, and until they have been duly authorized for purchase by the customer or their duly authorized (with appropriate documentation) agent.

6. <u>Independent Contractor Status</u>. The relationship between Independent Contractor and White Pacific shall be that of an independent contractor, and nothing contemplated as part of this Agreement shall be construed to create an employer-employee relationship. Independent Contractor shall and does hereby assume and accept any and all responsibilities which are imposed upon an independent contractor by any federal, state or local statute, regulation, or rule, including but not limited to the Applicable Regulations and Rules. Except as required by the Applicable Regulations and Rules, White Pacific shall not direct, determine or control, in any manner, the method or means by which the Independent Contractor shall conduct his/her securities operation or business. Independent Contractor shall use his or her sole judgment with respect to the time, place and manner of any securities "solicitation," including orders taken on an "unsolicited" basis, as these terms are commonly understood in the brokerage business, of

securities orders, including any recommendations generally to such brokerage customers. Among other things, Independent Contractor shall (1) determine his/her own work hours; (2) pay his/her own business expenses, including, telephone, entertainment, advertising, secretarial assistance or any other office or business operational charge or expense, including any applicable state or regulatory registration or brokerage license fees or costs; (3) receive compensation solely on a commission basis; and (4) determine the specific types of securities or other investment vehicle to which he/she shall devote his/her business. Independent Contractor will supply all personnel to perform services under this Agreement. Independent Contractor shall be solely responsible for the direction and control of any personnel he/she supplies to perform services under this Agreement, including decisions regarding hiring, firing, supervision, assignment and the setting of wages and working conditions. White Pacific shall neither have nor exercise disciplinary control or authority over Independent Contractor or personnel supplied by Independent Contractor to perform services under this Agreement, except as required by the Applicable Regulations and Rules. **No personnel supplied by Independent Contractor to perform services under this Agreement shall be, or shall be deemed to be, the employee, agent or servant of White Pacific. Independent Contractor acknowledges his/her affirmative obligation to inform all such personnel that they are not employees of White Pacific.** White Pacific is interested only in the results obtained under this Agreement; the manner and means by which Independent Contractor performs services under this Agreement is under the sole direction and control of Independent Contractor. Independent Contractor will be solely and entirely responsible for the acts of any personnel supplied to perform services under this Agreement. Independent Contractor shall retain sole financial responsibility for all withholding and employment taxes due to any federal, state or local authority on account of the work performed by Independent Contractor and any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor agrees to indemnify and hold harmless White Pacific from any claims made by any personnel supplied by Independent Contractor to perform services under this Agreement. Independent Contractor acknowledges and agrees that as an independent contractor, he/she will not receive retirement benefits, unemployment insurance, health insurance, life insurance, disability insurance, or worker's compensation insurance from White Pacific, and that White Pacific will not withhold personal income tax, social security tax, or any other state, federal or local tax from the commission paid to Independent Contractor, unless ordered to by a competent state or federal authority. Independent Contractor acknowledges that the payment of such taxes including income taxes and self-employment taxes are his/her own personal responsibility and obligation. Independent Contractor shall independently provide, maintain and control, at his/her expense, all the equipment, tools, and data necessary to operate his/her securities business. White Pacific may, although is not required under this Agreement to, make available equipment or other data or technology, electronic or otherwise, to obtain quotations of the market price of securities or other generally available market data regarding the stock market generally or for a particular security. Independent Contractor acknowledges and agrees that White

*Independent Contractor Agreement*                3                Independent Contractor Initials: _DR_

092

Pacific does not independently provide such research or data, and is in no way providing investment advice generally or making any investment recommendation to any brokerage customer, rather such skills and advice are provided by Independent Contractor to his/her brokerage customer.

7.     <u>No Actual or Ostensible Authority</u>. **Independent Contractor acknowledges that he/she is not an agent of White Pacific for purposes of entering into agreements, or binding White Pacific to contracts, and that it would be unlawful to represent him/herself as having either actual or ostensible authority to open any account, or to enter into agreements or contracts on White Pacific's behalf, or in White Pacific's name, other than related to the sales of securities as a Registered Representative of White Pacific.** Independent Contractor is not authorized to pledge the credit of White Pacific or to contractually obligate White Pacific in any manner. Any reference to White Pacific as a corporate entity (*"White Pacific Securities, Inc."* or *"White Pacific Securities"*) in any agreements or contracts Independent Contractor enters into by way of conducting his/her independent securities brokerage business is <u>voidable and strictly prohibited, and can result in termination of Independent Contractor's affiliation with White Pacific for cause</u>. Any contract or agreement Independent Contractor signs must be executed either in his/her individual capacity or as an authorized party in a separately-held corporation.

8.     <u>Receipt of Back-Office and Compliance Manuals</u>. Solely for the purpose of compliance with Applicable Regulations and Rules, Independent Contractor acknowledges receipt of both White Pacific's *Compliance* and *Back Office Policy and Procedure Manuals* and represents that he/she has carefully read the same and understands the regulatory and operational requirements imposed thereby and <u>agrees to conduct his/her brokerage business and operation in conformity with such regulatory requirements</u>. Independent Contractor agrees that these documents are the property of White Pacific and that upon the termination of this Agreement, Independent Contractor will promptly return to White Pacific all copies of these documents.

9.     <u>Other Regulatory Requirements</u>. Independent Contractor represents, warrants and agrees that he/she will comply with Applicable Regulations and Rules by taking no action which he/she may have reason to believe is inconsistent with the best interest of his/her clients or customers. In this connection, Independent Contractor acknowledges his or her affirmative duty to disclose to any brokerage customer (or member of the general public) any and all known material facts relating to any contemplated securities transaction. Independent Contractor represents that he/she is familiar with the ongoing requirement under Applicable Regulations and Rules that he/she "know their customer," acknowledges the responsibility to know and understand what is imposed by such a rule, including, but not limited to, transactions done both on a full service or possibly discounted or solicited or recommended basis, if applicable, and agrees at all times to conduct his/her securities business in a manner consistent therewith, such that all customer transactions are suitable for said customer.

10.    Solicitation. As required by Applicable Regulations and Rules, Independent Contractor shall not use or cause to be used what could be deemed a solicitation, including, but not limited to any prospectus, subscription agreement, sales literature, news letter, analysis, or advertising material, of any kind, electronic or otherwise, unless initialed and pre-approved by White Pacific's Compliance Department. *Independent Contractor acknowledges that he/she is not authorized, unless properly licensed, to provide any tax or legal advice to his/her customers.*

11.    Controls on Monies, Funds and Securities Received. As required by Applicable Regulations and Rules, Independent Contractor agrees to maintain strict controls over, and immediately forward to White Pacific for deposit to its clearing agent, all monies and securities received from any brokerage client or customer, during the term of registration with White Pacific, as payment for securities purchased or to be purchased in the future, without commingling, pledging or diverting same in any manner. Independent Contractor warrants that he/she shall ensure that all of his/her brokerage clients or customers promptly remit, in negotiable form, all monies or securities, as the case may be, to White Pacific for deposit to its clearing agent in accordance with Regulation T. Independent Contractor will partly accomplish this by, at all times, advising and explaining to all his/her brokerage customers that all such checks need to be made payable to White Pacific's clearing agent, that all securities must be delivered in negotiable form, and that proceeds must be held until cleared by the third-party clearing agent accordingly.

12.    Securities Must be Registered. As required by Applicable Regulations and Rules, Independent Contractor warrants and agrees that he/she will not solicit orders for and consummate sales for securities until he/she has been duly registered under and pursuant to applicable state and federal laws and in connection therewith, and further, unless such registration is then in effect. As required by Applicable Regulations and Rules, orders for the purchase of shares or other securities shall be subject to acceptance and approval of White Pacific, without warranty as to suitability of the investment.

13.    Confidentiality. Independent Contractor acknowledges that in the course of the performance or actions contemplated by the Agreement, he/she may be provided with non-public confidential information about his/her brokerage customer, White Pacific, or third parties with which White Pacific may have a relationship (such information being referred to collectively as "Confidential Information"). Independent Contractor agrees to comply with all Applicable Regulations and Rules concerning Confidential Information and agrees that he/she will treat all Confidential Information as confidential, whether marked as such or otherwise, maintaining such information in strict confidence, and not using Confidential Information for any purpose except performing under this Agreement, and using at least reasonable care to avoid unauthorized use or disclosure of such Confidential Information. **Independent Contractor further acknowledges that White Pacific "house accounts" are valuable and proprietary to White Pacific and agrees**

*Independent Contractor Agreement*          5          Independent Contractor Initials: ꓓＲ

093

# NASD Dispute Resolution

## ORDER

Case Number: _04-03449_

Case Name: _Denise Reed v. White Pacific Securities, Inc. and Roy Pinelli_

Issues Addressed: (ie., name of motion or request, by which party)

_Respondent White Pacific Securities, Inc.'s Motion to modify Award as to Attorneys' Fees_

**Pre-Hearing Conference Held?:**     (Yes)     No     (circle one)

Date/Time:

Participating in the conference were:

Chairperson: _Sheldon Michaels_

Panelist: _Barbara M. Anscher_

Panelist: _Jane F. Gundermann_

Claimant's Representative: _____

#1 Respondent's Representative: _____

#2 Respondent's Representative: _____

NASD Dispute Resolution Staff: _____

**Decided by:**   ~~Chairperson~~   (Panel)     (circle one)

**Rulings[1]:**

After considering the pleadings submitted by the parties (and oral arguments, if pre-hearing conference held), the Panel/~~Chairperson~~ rules as follows:

1. _Motion is Denied._

---

[1] If more space is needed, add additional pages.

2. _____

3. _____

If the parties settle this matter prior to the hearing, the forum fees for this pre-hearing conference (or discovery-related motion decided without a pre-hearing conference) are assessed as follows:

_____ % to Claimant(s), jointly and severally
_____ % to Respondent(s), jointly and severally
_____ % assessed to _____
_____ % assessed to _____
_____ % assessed to _____
_____ % assessed to _____

X _Sheldon Michael_          Date: _7/26/07_
Chairperson,
On behalf of the Arbitration Panel

TRANSMISSION VERIFICATION REPORT

```
                                        TIME : 07/30/2007 14:20
                                        NAME : SHUSTAK & PARTNERS
                                        FAX  : 6196155290
                                        TEL  : 6196969500
```

```
     DATE,TIME                    07/30 14:19
     FAX NO./NAME                 17757860998
     DURATION                     00:01:19
     PAGE(S)                      04
     RESULT                       OK
     MODE                         STANDARD
                                  ECM
```

# EXHIBIT D

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|---|---|---|---|---|---|---|---|---|---|
| **Client ID 1420.02 REED/DENISE** | | | | | | | | | |
| 1420.02 | 06/19/2007 | 19 | A | 1 | 395.00 | 1.50 | 592.50 | PREPARE PETITION TO CONFIRM ARBITRATION AWARD | ARCH |
| 1420.02 | 06/22/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS FROM ERIN BARBER REGARDING STATUS OF PETITION TO CONFIRM | ARCH |
| 1420.02 | 06/28/2007 | 10 | A | 3 | 350.00 | 0.25 | 87.50 | TELECONF WITH J. TOLENO RE REED MATTER; REVIEW EMAILS FROM WORKING GROUP RE STATUS OF REED. | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 1.00 | 395.00 | RECEIVE AND REVIEW MOTION TO MODIFY AWARD; RESEARCH REGARDING SAME | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | PREPARE MEMO TO ATTORNEYS REGARDING LITIGATION STRATEGY | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH ERWIN SHUSTAK REGARDING JURISDICTIONAL ISSUES | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 1.00 | 395.00 | PREPARE OPPOSITION TO MOTION FOR RECONSIDERATION | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 1.00 | 395.00 | PREPARE PETITION TO CONFIRM AWARD | ARCH |
| 1420.02 | 06/28/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | REVIEW MEMO BY ROB HILL REGARDING LIMITATIONS PERIOD FOR MOTIONS FOR RECONSIDERATION | ARCH |
| 1420.02 | 06/29/2007 | 1 | A | 3 | 495.00 | 1.25 | 618.75 | REVIEWING MOTION FOR RECONSIDERATION; REVIEW OF NASD CODE OF ARBITRATION; CONFERENCE AND EMAILS WITH JT AND TF RE: STRATEGY FOR CONFIRMING AWARD; | ARCH |
| 1420.02 | 06/29/2007 | 18 | A | 3 | 395.00 | 1.50 | 592.50 | REVIEW MOTION FOR RECONSIDERATION & RESEARCH BY ATTY RH; RESEARCH FEDERAL RULES RE MOTION TO CONFIRM & VACATE; CONFERENCE WITH ATTY TF RE SAME. | ARCH |
| 1420.02 | 06/29/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | DRAFT LETTER TO NASD & OPP COUNSEL RE RESPONSE TO MOTION FOR RECONSIDERATION; SEND SAME TO CLIENT. | ARCH |
| 1420.02 | 06/30/2007 | 1 | A | 19 | | | 19.24 | THOMSON WEST - LEGAL RESEARCH; | ARCH |
| 1420.02 | 07/02/2007 | 18 | A | 1 | 395.00 | 0.25 | 98.75 | CONFERENCE WITH ATTY TF RE FILING PETITION IN FED CT TO CONFIRM AWARD. | ARCH |
| 1420.02 | 07/02/2007 | 10 | A | 3 | 350.00 | 0.25 | 87.50 | TELECONF WITH J. TOLENO RE REED MATTER. | ARCH |
| 1420.02 | 07/02/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | BEGIN DRAFTING OPPOSITION TO MOTION TO MODIFY AWARD AS TO ATTYS FEES. | ARCH |
| 1420.02 | 07/02/2007 | 1 | A | 19 | | | 63.28 | THOMSON WEST - LEGAL RESEARCH; | ARCH |
| 1420.02 | 07/03/2007 | 16 | A | 3 | 150.00 | 0.25 | 37.50 | CALENDARED AND ALERTED ATTORNEYS TO DEADLINE SET BY NASD TO FILE OPPOSITION TO MOTION TO MODIFY SETTLEMENT. | ARCH |
| 1420.02 | 07/03/2007 | 18 | A | 3 | 395.00 | 0.75 | 296.25 | CONTINUE OPPOSITION TO MOTION TO MODIFY ARB AWARD & RESEARCH RE SAME; CORRESPOND WITH PARALEGAL DG & STAFF RE SAME; REVIEW ARBITRATION AWARD. | ARCH |
| 1420.02 | 07/03/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | REVIEW CORRESPONDENCE FROM NASD RE MOTION TO MODIFY AWARD FOR USE IN DRAFTING OPPOSITION. | ARCH |
| 1420.02 | 07/04/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | REVIEW EMAILS FROM JONAH TOLENO REGARDING STATUS OF MATTER | ARCH |
| 1420.02 | 07/06/2007 | 18 | A | 3 | 395.00 | 2.75 | 1086.25 | DRAFT, REVISE & FINALIZE OPPOSITION TO MOTION TO MODIFY ATTORNEYS' FEES; RESEARCH RE SAME; CONFERENCE WITH ATTY EJS RE SAME. | ARCH |
| 1420.02 | 07/09/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | CONTINUE DRAFTING PETITION TO CONFIRM ARBITRATION AWARD IN FEDERAL COURT. | ARCH |
| 1420.02 | 07/11/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | EXCHANGE E-MAILS WITH CLIENT & ATTY TF RE STATUS OF OPPOSITION TO MOTION TO MODIFY AWARD, POSTURE OF CASE & RE PETITION TO CONFIRM. | ARCH |
| 1420.02 | 07/11/2007 | 16 | A | 3 | 150.00 | 0.25 | 37.50 | REVIEWED CASE FILE TO RESPOND TO CALL FROM NASD. | ARCH |
| 1420.02 | 07/11/2007 | 16 | A | 1 | 150.00 | 0.50 | 75.00 | CONFERENCE WITH JONAH TOLENO REGARDING CASE INFORMATION, CURRENT BRIEFS THAT ARE DUE AND NASD QUESTIONS. | ARCH |
| 1420.02 | 07/13/2007 | 4 | A | 49 | 295.00 | 1.50 | 442.50 | REVISE DOCUMENTS RELATING TO PETITION TO CONFIRM ARBITRATION AWARD; CONFERENCE WITH ATTY JAT | ARCH |
| 1420.02 | 07/13/2007 | 4 | A | 3 | 295.00 | 0.75 | 221.25 | REVISE PETITION TO CONFIRM ARBITRATION AWARD DOCUMENTS PURSUANT TO ATTY JAT'S REVISIONS | ARCH |
| 1420.02 | 07/13/2007 | 4 | A | 3 | 295.00 | 0.50 | 147.50 | DRAFT CIVIL CASE COVER SHEET AND SUMMONS; CONFER WITH ATTY TAF RE: PROPER FILING PROCEDURE | ARCH |
| 1420.02 | 07/13/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVISIONS TO MY DECLARATION IN SUPPORT OF PETITION TO CONFIRM AWARD; ASSIGN FINALIZATION OF PETITION PAPERS TO ATTY RH. | ARCH |
| 1420.02 | 07/13/2007 | 16 | A | 3 | 150.00 | 0.75 | 112.50 | FINALIZED PETITION DOCUMENTS. | ARCH |
| 1420.02 | 07/13/2007 | 16 | A | 3 | 150.00 | 1.75 | 262.50 | RESEARCHED PROCEDURE TO FILE PETITION TO CONFIRM ARBITRATION AWARD IN FEDERAL COURT. | ARCH |
| 1420.02 | 07/16/2007 | 16 | A | 3 | 150.00 | 0.75 | 112.50 | FINALIZE PETITION FOR AWARD. | ARCH |
| 1420.02 | 07/16/2007 | 16 | A | 1 | 150.00 | 0.25 | 37.50 | CONFERENCE WITH ROB HILL REGARDING PROCEDURE FOR SERVING THE PETITION TO CONFIRM | ARCH |

Date: 12/05/2007
**Detail Transaction File List**
SHUSTAK & PARTNERS, PC
Page: 2

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|---|---|---|---|---|---|---|---|---|---|

**Client ID 1420.02 REED/DENISE**

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Description | Ref # |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | AWARD, HEARING DATES AND ASSOCIATED BRIEFS RELATED TO THIS FILING. | |
| 1420.02 | 07/17/2007 | 16 | A | 1 | 150.00 | 0.25 | 37.50 | CONFERENCE WITH JONAH REGARDING PETITION TO CONFIRM AWARD. | ARCH |
| 1420.02 | 07/17/2007 | 16 | A | 3 | 150.00 | 1.00 | 150.00 | RESEARCH AND PHONE CORRESPONDENCE WITH ATTORNEY REGARDING THE FILING OF OUR PETITION TO CONFIRM AWARD. | ARCH |
| 1420.02 | 07/17/2007 | 16 | A | 4 | 150.00 | 0.25 | 37.50 | TELEPHONE CONFERENCE WITH DERRICK SORRELLS OF THE NASD REGARDING EXPUNGEMENT. | ARCH |
| 1420.02 | 07/17/2007 | 16 | A | 1 | 150.00 | 0.25 | 37.50 | CONFERENCE WITH JONAH REGARDING THE AMENDED PETITION TO CONFIRM AWARD AND WAIVER OF SERVICE FOR THE NASD. | ARCH |
| 1420.02 | 07/17/2007 | 1 | A | 3 | 495.00 | 1.00 | 495.00 | REVIEW PETITION TO CONFIRM; CONFERENCE WITH JT RE: AMENDING TO ADD NASD AND SEEK LEGAL FEES; | ARCH |
| 1420.02 | 07/17/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW MULTIPLE NOTICES FROM FEDERAL COURT RE PETITION FILING; CONFERENCE WITH ATTY EJS RE STRATEGY FOR EXPUNGEMENT PROCEDURES; CONFERENCE WITH PARALEGAL RE CALENDARING OF PETITION DATES. | ARCH |
| 1420.02 | 07/18/2007 | 1 | A | 3 | 495.00 | 2.75 | 1361.25 | REVIEW PETITION TO CONFIRM AND LETTER TO NASD; CONFERENCE WITH J. TOLENO RE: AMENDING PETITION AND RETURN DATE; T/C NASD CASE MANAGER RE: STATUS; | ARCH |
| 1420.02 | 07/18/2007 | 18 | A | 3 | 395.00 | 2.00 | 790.00 | DRAFT & REVISE 1ST AMENDED PETITION TO CONFIRM ARBITRATION AWARD; RESEARCH RE SERVICE OF SAME ON NASD. | ARCH |
| 1420.02 | 07/18/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW MULTIPLE CORRESPONDENCES FROM FEDERAL COURT RE FILING OF PETITION TO CONFIRM ARBITRATION AWARD; DISCUSS RE SAME WITH ATTY EJS. | ARCH |
| 1420.02 | 07/19/2007 | 16 | A | 3 | 150.00 | 0.25 | 37.50 | RESEARCH AND CONFERENCE WITH JONAH REGARDING SERVING THE NASD WITH THE AMENDED PETITION. | ARCH |
| 1420.02 | 07/19/2007 | 16 | A | 3 | 150.00 | 1.00 | 150.00 | CREATING CAPTION AND PROOF OF SERVICE FOR PETITION. | ARCH |
| 1420.02 | 07/19/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | CONTINUE REVISIONS TO 1ST AMENDED PETITION & SUPPORTING DOCUMENTS. | ARCH |
| 1420.02 | 07/20/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVISE 1ST AMENDED PETITION TO CONFIRM & SUPPORTING DOCUMENTS; REVIEW SAME WITH ATTY EJS. | ARCH |
| 1420.02 | 07/23/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | FINALIZE 1ST AMENDED PETITION & SUPPORTING DOCUMENTS FOR ELECTRONIC FILING WITH FEDERAL COURT. | ARCH |
| 1420.02 | 07/23/2007 | 16 | A | 3 | 150.00 | 3.00 | 450.00 | FINALIZING AMENDED PETITION DOCUMENTS TO GET PREPARED TO E-FILE. | ARCH |
| 1420.02 | 07/23/2007 | 1 | A | 20 | 0.220 | | 10.78 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 07/23/2007 | 1 | A | 20 | 0.220 | | 8.80 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 07/23/2007 | 1 | A | 21 | 1.000 | | 6.00 | OUTGOING FACSIMILE | ARCH |
| 1420.02 | 07/23/2007 | 1 | A | 32 | 0.030 | | 0.93 | SCANNING EXPENSE | ARCH |
| 1420.02 | 07/23/2007 | 1 | A | 23 | 0.410 | | 3.62 | POSTAGE | ARCH |
| 1420.02 | 07/24/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | TELEPHONE CALL TO ATTY SULLWOLD RE SERVICE OF PETITION DOCUMENTS. | ARCH |
| 1420.02 | 07/24/2007 | 16 | A | 3 | 150.00 | 0.25 | 37.50 | REVISED ALL PETITION DOCUMENTS TO REFLECT TODAY'S DATE. | ARCH |
| 1420.02 | 07/24/2007 | 16 | A | 1 | 150.00 | 0.25 | 37.50 | CONFERENCE WITH JONAH REGARDING OPPOSING COUNSEL REPRESENTATION OF ROY PANELLI AND WAIVER DOCUMENTS FOR SULLWOLD AND THE NASD. | ARCH |
| 1420.02 | 07/24/2007 | 16 | A | 3 | 150.00 | 0.25 | 37.50 | EMAIL CORRESPONDENCE WITH ATTORNEY SERVICE REGARDING THE FILING OF OUR ORIGINAL PETITION. | ARCH |
| 1420.02 | 07/24/2007 | 16 | A | 3 | 150.00 | 1.00 | 150.00 | SEARCHED FILE AND WESTLAW FOR THE CORRECT ADDRESS OF ROY PANELLI TO FACILITATE SERVICE OF THE PETITION AND THE FIRST AMENDED PETITION. REVISED DOCUMENTS TO REFLECT THAT SULLWOLD WILL NOT REPRESENT PANELLI. | ARCH |
| 1420.02 | 07/24/2007 | 16 | A | 3 | 150.00 | 1.50 | 225.00 | E-FILED FIRST AMENDED COMPLAINT WITH US DISTRICT COURT.  FORWARDED THE PROPOSED ORDER DIRECTLY TO THE JUDGE.  PREPARED COPIES TO BE SERVED ON ALL RESPONDENTS. | ARCH |
| 1420.02 | 07/24/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | ADDITIONAL TELEPHONE CALL FROM ATTY SULLWOLD RE WAIVER OF SERVICE OF PETITION DOCUMENTS; CONFERENCE WITH PARALEGAL DG RE SERVICE ON RESPONDENT PANELLI | ARCH |
| 1420.02 | 07/25/2007 | 16 | A | 3 | 150.00 | 0.50 | 75.00 | PREPARED FILED COPIES OF THE PETITION TO BE SERVED ON ROY PANELLI. | ARCH |
| 1420.02 | 07/25/2007 | 16 | A | 3 | 150.00 | 0.75 | 112.50 | DRAFTED WAIVER LETTER AND FORMS FOR OPPOSING COUNSEL TO SIGN. | ARCH |
| 1420.02 | 07/25/2007 | 16 | A | 3 | 150.00 | 0.50 | 75.00 | FINALIZED WAIVER DOCUMENTS AND MAILED TO | ARCH |

Date: 12/05/2007

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|--------------|--------|--|-------|
| **Client ID 1420.02 REED/DENISE** | | | | | | | | | |
| | | | | | | | | OPPOSING COUNSEL. | |
| 1420.02 | 07/25/2007 | 1 | A | 22 | | | 27.79 | OVERNIGHT DELIVERY OVERNITE EXPRESS PARCEL SERVICE | ARCH |
| 1420.02 | 07/25/2007 | 1 | A | 22 | | | 29.79 | OVERNIGHT DELIVERY OVERNITE EXPRESS PARCEL SERVICE | ARCH |
| 1420.02 | 07/25/2007 | 1 | A | 22 | | | 27.79 | OVERNIGHT DELIVERY OVERNITE EXPRESS PARCEL SERVICE | ARCH |
| 1420.02 | 07/26/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH JONAH TOLENO REGARDING STATUS OF MOTION FOR RECONSIDERATION | ARCH |
| 1420.02 | 07/27/2007 | 18 | A | 3 | 395.00 | 1.00 | 395.00 | MULTIPLE CONFERENCES & E-MAILS WITH ATTY TF & PARALEGAL DG RE NASD'S FAILURE TO EXPUNGE CLIENT'S RECORDS AND RE PETITION TO CONFIRM; REVIEW CLIENT'S RECORDS AGAINST ARBITRATION AWARD TO DETERMINE POTENTIAL DISCREPANCIES; EMAIL TO CLIENT RE SAME. | ARCH |
| 1420.02 | 07/27/2007 | 16 | A | 3 | 150.00 | 2.00 | 300.00 | REVIEWING CASE FILE, CALLS TO THE NASD AND RESEARCH OF NASD RULES TO FIND OUT WHY THE NASD HAS NOT EXPUNGED  MS REED'S CRD. | ARCH |
| 1420.02 | 07/27/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH JONAH TOLENO AND DOMINICK GIOVANIELLO REGARDING STATUS OF MOTION FOR RECONSIDERATION | ARCH |
| 1420.02 | 07/30/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW NASD'S ORDER DENYING WP'S MTN TO MODIFY; DISCUSS RE SAME WITH ATTYS TF/EJS & RE SUSPENSION OF WP'S LICENSE; E-MAIL COPIES OF FEDERAL PETITION PAPERS TO CLIENT. | ARCH |
| 1420.02 | 07/30/2007 | 16 | A | 4 | 150.00 | | 75.00 | TELEPHONE CONFERENCE WITH RITA LEE AT THE NASD TO CLARIFY HER LETTER TO US REGARDING EXPUNGEMENT. | ARCH |
| 1420.02 | 07/30/2007 | 19 | A | 1 | 395.00 | 0.25 | 98.75 | RECEIVE AND REVIEW ORDER DENYING MOTION FOR RECONSIDERATION | ARCH |
| 1420.02 | 07/30/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | PREPARE LETTER TO COUNSEL REGARDING ESCROW FUNDS | ARCH |
| 1420.02 | 07/30/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS AND TELEPHONE CALLS WITH ATTORNEY LIPPENBERGER REGARDING ESCROW INSTRUCTIONS | ARCH |
| 1420.02 | 07/30/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | RECEIVE AND REVIEW ESCROW INSTRUCTIONS; EMAILS WITH MICHAEL BOLGATZ RE SAME | ARCH |
| 1420.02 | 07/31/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | REVIEW E-MAILS FROM ATTYS EJS & TF RE STRATEGY FOR EXPUNGEMENT, OBTAINING ATTORNEYS' FEES & PETITION TO CONFIRM. | ARCH |
| 1420.02 | 07/31/2007 | 1 | A | 3 | 495.00 | 1.25 | 618.75 | CONFERENCE WITH TF AND JT RE: OBTAINING MONEY FROM ESCROW AGENT AND REVIEW OF ESCROW PROVISIONS; | ARCH |
| 1420.02 | 07/31/2007 | 1 | A | 19 | | | 67.17 | THOMSON WEST - LEGAL RESEARCH; | ARCH |
| 1420.02 | 08/02/2007 | 16 | A | 1 | 165.00 | 0.50 | 82.50 | CONFERENCE WITH JONAH TO DISCUSS MY CONVERSATION WITH THE NASD, WHERE WE STAND WITH EXPUNGEMENT ISSUES AND OUR PETITION TO CONFIRM. | ARCH |
| 1420.02 | 08/02/2007 | 18 | A | 3 | 395.00 | 2.75 | 1086.25 | MULTIPLE TELEPHONE CONFERENCES WITH CLIENT & FRANK HO RE EXPUNGEMENT ISSUES; RECEIVE & REVIEW VARIOUS E-MAILS & CRD. DOCUMENTS FROM FRANK HO RE CLIENT'S RECORDS & DISCLOSURES; CONFERENCE WITH ATTY EJS RE SAME & RE ENFORCING COLLECTION OF INTEREST FROM WHITE PACIFIC ON ARB AWARD; DRAFT LETTER TO COUNSEL FOR WHITE PACIFIC TO DEMAND INTEREST PAYMENT. | ARCH |
| 1420.02 | 08/02/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH CLIENT AND JONAH TOLENO REGARDING STATUS OF EXPUNGEMENT AND PAYMENT OF AWARD; MEETING WITH JONAH TOLENO RE SAME | ARCH |
| 1420.02 | 08/03/2007 | 18 | A | 3 | 395.00 | 1.50 | 592.50 | CONFERENCE WITH ATTY EJS RE COLLECTION OF INTEREST FROM WHITE PACIFIC; REVISE LETTER TO WHITE PACIFIC'S COUNSEL RE SAME; SEND CORRESPONDENCE TO CLIENT TO UPDATE HER RE SAME. | ARCH |
| 1420.02 | 08/03/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | MULTIPLE TELEPHONE CONFERENCES WITH NASD RE EXPUNGEMENT OF CRIMINAL RECORD DISCLOSURE; UPDATE CLIENT RE SAME. | ARCH |
| 1420.02 | 08/03/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH CLIENT AND ERWIN SHUSTAK REGARDING STATUS OF MATTER | ARCH |
| 1420.02 | 08/03/2007 | 19 | A | 1 | 395.00 | 0.25 | 98.75 | REVIEW LETTER TO JOHN SULLWOLD REGARDING POST ARBITRATION MATTERS | ARCH |
| 1420.02 | 08/03/2007 | 1 | A | 20 | 0.220 | | 45.32 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 08/03/2007 | 1 | A | 20 | 0.220 | | 24.64 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 08/03/2007 | 1 | A | 21 | 1.000 | | 6.00 | OUTGOING FACSIMILE | ARCH |
| 1420.02 | 08/03/2007 | 1 | A | 23 | 0.410 | | 5.40 | POSTAGE | ARCH |
| 1420.02 | 08/06/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | REVIEWED COMPLIANCE DOCUMENTS TO ASSIST WITH EXPUNGEMENT. | ARCH |
| 1420.02 | 08/06/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | CONFERENCE WITH JONAH REGARDING | ARCH |

Date; 12/05/2007

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

Page: 4

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|--|-------|
| **Client ID 1420.02 REED/DENISE** | | | | | | | | | |
| | | | | | | | | EXPUNGEMENT, HER CONVERSATION WITH NASD COUNSEL REGARDING THE 1ST AMENDED PETITION AND MY REVIEW OF THE COMPLIANCE DOCUMENTS. | |
| 1420.02 | 08/06/2007 | 16 | A | 3 | 165.00 | 0.75 | 123.75 | SEARCHED AND RETRIEVED TENNESSEE COURT ORDER OF EXPUNGEMENT. REFORMATTED DOCUMENT TO MAKE IT MORE LEGIBLE AND FORWARDED TO JONAH TOLENO. | ARCH |
| 1420.02 | 08/06/2007 | 16 | A | 4 | 165.00 | 0.50 | 82.50 | TELEPHONE CONFERENCE WITH COURT CLERK REGARDING ECF NOTICE DEMANDING THAT WE E-FILE THE INITIAL PLEADING. EMAILED DOCUMENTS REQUEST BY THE CLERK. | ARCH |
| 1420.02 | 08/06/2007 | 18 | A | 3 | 395.00 | 3.75 | 1481.25 | MULTIPLE E-MAILS WITH CLIENT RE C.R.D. RECORDS & CRIMINAL DISCLOSURES; MULTIPLE E-MAILS & TELEPHONE CONFERENCES WITH FRANK HO OF CLIENT'S EMPLOYER RE C.R.D RECORDS; REVIEW DOCUMENTS FROM FRANK HO; TELEPHONE CONFERENCE & MULTIPLE E-MAILS WITH NASD COUNSEL SARAH GILL RE EXPUNGEMENT & PETITION MATTERS; REVIEW MULTIPLE E-MAILS FROM FEDERAL COURT RE STATUS OF PETITION & CONFER WITH PARALEGAL DG RE SAME; | ARCH |
| 1420.02 | 08/07/2007 | 16 | A | 4 | 165.00 | 0.25 | 41.25 | TELEPHONE CONFERENCE WITH MICHELLE JACKO REGARDING CRD INFO FOR DENISE REED. | ARCH |
| 1420.02 | 08/07/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH RELATING INFORMATION MICHELLE GAVE ME TO FIND OUT WHAT THE NASD IS DOING WITH CLIENT'S CRD. | ARCH |
| 1420.02 | 08/07/2007 | 19 | A | 1 | 395.00 | 0.25 | 98.75 | EMAILS WITH JONAH TOLENO REGARDING FINRA EXTENSION TO RESPOND | ARCH |
| 1420.02 | 08/07/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | PREPARE RESPONSE TO LETTER BY SULLWOLD REGARDING ATTORNEYS FEES | ARCH |
| 1420.02 | 08/08/2007 | 4 | A | 1 | 325.00 | 0.25 | 81.25 | CONFERENCE WITH ATTY JT RE: FEDERAL PLEADING REQUIREMENTS, CASE STATUS, AND CASE STRATEGY | ARCH |
| 1420.02 | 08/08/2007 | 12 | A | 3 | 110.00 | 4.25 | 467.50 | SEVERAL CONFERENCES WITH JAT RE REQUIRED RESEARCH; RESEARCHED CHALLENGE TO SUBJECT MATTER JURISDICTION; PREPARED MEMO; EMAIL TO JAT | ARCH |
| 1420.02 | 08/08/2007 | 18 | A | 3 | 395.00 | 3.50 | 1382.50 | MULTIPLE E-MAILS & TELEPHONE CALLS WITH COUNSEL FOR NASD RE EXPUNGEMENT & RE NASD'S DEADLINE TO FILE RESPONSE TO PETITION; REVIEW & FINALIZE PETITION CONFIRMING NASD'S DEADLINE; REVIEW VARIOUS RESEARCH MEMOS BY LAW CLERK RE SUBJECT MATTER JURISDICTION IN FEDERAL COURT & DO FOLLOW UP RESEARCH RE SAME; REVIEW VARIOUS NOTICES FROM COURT RE COURT FILINGS PERTAINING TO PETITION; MULTIPLE E-MAILS WITH OPPOSING COUNSEL RE COLLECTING INTEREST ON ARBITRATION AWARD & RE SUBJECT MATTER JURISDICTION GROUNDS. | ARCH |
| 1420.02 | 08/08/2007 | 19 | A | 1 | 395.00 | 0.25 | 98.75 | EMAIL TO JONAH TOLENO REGARDING FEDERAL COURT JURISDICTION ISSUES | ARCH |
| 1420.02 | 08/09/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | MULTIPLE E-MAILS WITH OPP COUNSEL RE JURISDICTION OF PETITION TO CONFIRM; FOLLOW-UP RESEARCH RE JURISDICTION ISSUES. | ARCH |
| 1420.02 | 08/10/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | REVIEWED CASE AND SERVICE DATE TO CREATE SERVICE CHART. | ARCH |
| 1420.02 | 08/10/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | RESEARCHED FED RULES OF CIVIL PROCEDURE RELATING TO WAIVER OF SERVICE OF SUMMONS TO PINPOINT A RESPONSE DEADLINE FOR SULLWOLD IN RELATION TO THE PETITION.. | ARCH |
| 1420.02 | 08/10/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING RESPONSE DATES AND CORRESPONDENCE FROM OPPOSING COUNSEL. | ARCH |
| 1420.02 | 08/10/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | CALENDARED RESPONSE DATES FOR ALL RESPONDENTS. | ARCH |
| 1420.02 | 08/10/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | CORRESPONDENCE/CONFERENCE WITH ATTYS TF/EJS RE PETITION & JURISDICTION MATTERS; FOLLOW UP RESEARCH RE SAME. | ARCH |
| 1420.02 | 08/13/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | CORRESPONDENCE WITH OPPOSING COUNSEL & PARALEGAL DG RE NASD'S ASSOCIATION WITH LOCAL COUNSEL IN PETITION MATTER. | ARCH |
| 1420.02 | 08/14/2007 | 16 | A | 4 | 165.00 | 0.25 | 41.25 | TELEPHONE CONFERENCE WITH SHEILAH, CALENDAR CLERK TO SEE HOW THE COURT WOULD PROCEED WITH RESPECT TO A HEARING DATE AND IF THEY WOULD VACATE THE INITIAL CASE CONFERENCE IN LIEU OF A MOTION HEARING. | ARCH |
| 1420.02 | 08/14/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | RESEARCHED LOCAL RULES TO ENSURE THAT I COULD CALL THE JUDGE'S CLERK FOR CLARIFICATION ON | ARCH |

Date: 12/05/2007

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

Page: 5

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|--------------|--------|--|-------|

**Client ID 1420.02 REED/DENISE**

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Description | Ref # |
|--------|-----------|------|-----|-----|------|--------------|--------|------------|-------|
| 1420.02 | 08/14/2007 | 16 | A | 1 | 165.00 | 0.00 | | BRIEFING SCHEDULE. CONFERENCE WITH JONAH REGARDING MY CONVERSATION WITH THE COURT CLERK. | ARCH |
| 1420.02 | 08/14/2007 | 18 | A | 3 | 395.00 | 0.75 | 296.25 | CONFERENCES WITH PARALEGAL & STAFF RE STATUS OF PETITION IN FEDERAL COURT & CORRESPONDING LITIGATION TIMELINE; CORRESPOND WITH OPPOSING COUNSEL RE PAYMENT OF INTEREST ON ARBITRATION AWARD. | ARCH |
| 1420.02 | 08/15/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | MULTIPLE CORRESPONDENCES (TELEPHONIC / ELECTRONIC) WITH OPPOSING COUNSEL RE STATUS OF NASD'S POSITION ON PETITION & RE SETTING UP CONFERENCE CALL; CONFERENCES WITH ATTYS TF & EJS RE SAME; SEND E-MAIL TO CLIENT RE STATUS OF CASE & UPCOMING CONFERENCE CALL. | ARCH |
| 1420.02 | 08/17/2007 | 1 | A | 20 | 0.220 | | 4.62 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 08/17/2007 | 1 | A | 23 | 0.410 | | 1.64 | POSTAGE | ARCH |
| 1420.02 | 08/17/2007 | 1 | A | 32 | 0.030 | | 0.39 | SCANNING EXPENSE | ARCH |
| 1420.02 | 08/20/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | FILED PROOF OF SERVICE FOR ROY PANELLI WITH THE COURT. | ARCH |
| 1420.02 | 08/22/2007 | 18 | A | 3 | 395.00 | 1.75 | 691.25 | TELEPHONE CONFERENCE WITH FINRA ATTYS, ATTYS EJS & TF RE EXPUNGEMENT & PETITION ISSUES; E-MAIL CLIENT SUMMARY OF CONFERENCE & STATUS; BEGIN ENLISTING CLIENT'S HELP IN CONTACTING TENNESSEE COUNSEL TO DISCUSS COURT EXPUNGEMENT ISSUES; FOLLOW UP CONFERENCE WITH ATTY TF RE STRATEGY FOR PETITION PROCESS IN LIGHT OF TELEPHONE CONFERENCE WITH FINRA. | ARCH |
| 1420.02 | 08/22/2007 | 1 | A | 3 | 495.00 | 0.50 | 247.50 | T/C WITH NASD COUNSEL RE: EXPUNGEMENT; | ARCH |
| 1420.02 | 08/22/2007 | 19 | A | 1 | 395.00 | 2.50 | 987.50 | PREPARATION AND TELEPHONE CONFERENCE WITH FINRA COUNSEL REGARDING EXPUNGEMENT | ARCH |
| 1420.02 | 08/23/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING NASD ISSUES AND EXTENSION OF TIME FOR THEM TO RESPOND. | ARCH |
| 1420.02 | 08/23/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | EXCHANGE E-MAILS WITH OPPOSING COUNSEL RE FINRA RESPONSE DATE & FOLLOW UP TO TELEPHONE CONFERENCE OF 8-22-07 RE CRIMINAL DISCLOSURE ISSUES; CONFERENCE WITH PARALEGAL RE BRIEFING OF PETITION & ANTICIPATED TIMELINE. | ARCH |
| 1420.02 | 08/24/2007 | 16 | A | 1 | 165.00 | 0.75 | 123.75 | REVIEWING CASE FILE TO FIND DOCUMENTS RELATING TO TN CRIMINAL CHARGES DUE TO FINRA'S OPPOSITION TO THE ARBITRATION AWARD. | ARCH |
| 1420.02 | 08/24/2007 | 1 | A | 32 | 0.030 | | 5.94 | SCANNING EXPENSE | ARCH |
| 1420.02 | 08/28/2007 | 1 | A | 32 | 0.030 | | 0.06 | SCANNING EXPENSE | ARCH |
| 1420.02 | 08/30/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING NON-APPEARANCE OF ROBERT SULLWOLD. | ARCH |
| 1420.02 | 08/30/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | CONFERENCE WITH PARALEGAL DG RE STATUS OF PETITION LITIGATION & DEFENDANT WHITE PACIFIC'S RESPONSE OBLIGATIONS; REVIEW PROCEDURAL HISTORY OF SIMILAR PETITION IN FEDERAL COURT; INSTRUCT PARALEGAL RE FOLLOWING UP ON NASD'S REQUEST FOR ADDITIONAL INFO FROM TN COURTS. | ARCH |
| 1420.02 | 08/31/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | E-MAIL CORRESPONDENCE WITH ATTY TF & CLIENT RE STATUS OF COMMUNICATIONS WITH TN ATTORNEY FOR CLARIFICATION RE COURT EXPUNGEMENT. | ARCH |
| 1420.02 | 09/04/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING WAIVER FORMS THAT WERE SENT BACK FROM MR. SULLWOLD. | ARCH |
| 1420.02 | 09/04/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | FILED WAIVER FROM SULLWOLD FOR WHITE PACIFIC. | ARCH |
| 1420.02 | 09/04/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | REVIEWED AND DISCUSSED PROCEDURALLY SIMILAR CASE IN NORTHERN DISTRICT OF CALIFORNIA WITH JONAH. | ARCH |
| 1420.02 | 09/04/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | CONFERENCES WITH PARALEGAL DG & ATTY TF RE PROCEDURAL POSTURE OF CASE, STRATEGY FOR EXPUNGEMENT ISSUES IN TN COURT & DEALINGS WITH FINRA; RESEARCH & REVIEW CASE LAW RE PETITION TO CONFIRM IN FEDERAL COURT. | ARCH |
| 1420.02 | 09/05/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | LOCATED DOCUMENTS REQUESTED BY FINRA TO EXPUNGE CRD RECORD. | ARCH |
| 1420.02 | 09/05/2007 | 18 | A | 3 | 395.00 | 1.50 | 592.50 | CONFERENCES WITH ATTY TF & PARALEGAL DG TO REVIEW TN COURT DOCUMENTS SUPPORTING EXPUNGEMENT; TELEPHONE CALL & E-MAILS WITH FINRA ATTY GILL RE STATUS OF EXPUNGEMENT PROCESS; SEND DOCUMENTATION TO FINRA TO ATTEMPT TO SETTLE EXPUNGEMENT MATTER OUTSIDE OF COURT; E-MAILS WITH CLIENT RE SAME & RE PROGRESS IN FEDERAL COURT; TELEPHONE CALL TO CLIENT'S FORMER ATTORNEY TO RESEARCH PRIOR EXPUNGEMENT EVENTS IN TN COURT. | ARCH |
| 1420.02 | 09/05/2007 | 19 | A | 1 | 395.00 | 1.50 | 592.50 | PREPARE RESPONSE TO NASD REGARDING | ARCH |

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|---|---|---|---|---|---|---|---|---|---|

**Client ID 1420.02 REED/DENISE**

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Description | Ref # |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | EXPUNGEMENT MATTERS; MEETING WITH JONAH TOLENO RE SAME | |
| 1420.02 | 09/05/2007 | 1 | A | 19 | | | 16.58 | THOMSON WEST - LEGAL RESEARCH | ARCH |
| 1420.02 | 09/05/2007 | 1 | A | 19 | | | 61.17 | THOMSON WEST - LEGAL RESEARCH | ARCH |
| 1420.02 | 09/06/2007 | 18 | A | 3 | 395.00 | 1.00 | 395.00 | CORRESPONDENCE WITH ATTY TF RE FURTHER ARGUMENTS TO MAKE ON BEHALF OF DENISE EXPUNGEMENT; E-MAIL FINRA ATTY RE SAME; EMAILS TO CLIENT RE UPDATES ON FINRA'S STANCE RE EXPUNGEMENT & RE FILED PETITION DOCUMENTS. | ARCH |
| 1420.02 | 09/06/2007 | 19 | A | 1 | 395.00 | 0.50 | 197.50 | EMAILS WITH TOLENO RE EXPUNGEMENT MATTER | ARCH |
| 1420.02 | 09/07/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | CORRESPONDENCE WITH CLIENT RE CONTACTING PRIOR ATTORNEY RE EXPUNGEMENT OF ASSAULT FROM TN COURT RECORDS; SEND CLIENT ADDITIONAL COPIES OF EXHIBITS SENT TO FINRA COUNSEL SUPPORTING EXPUNGEMENT. | ARCH |
| 1420.02 | 09/07/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | TELEPHONE CALL TO TN COURT RE RECORDS OF ASSAULT & VANDALISM CHARGES; E-MAILS TO ATTYS TF & EJS RE POSSIBLE FURTHER INVESTIGATION OF EXPUNGEMENT FROM OTHER GOVT AGENCIES. | ARCH |
| 1420.02 | 09/10/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING HER DISCUSSIONS WITH FINRA AND HOW WE WILL PROCEED. | ARCH |
| 1420.02 | 09/10/2007 | 18 | A | 3 | 395.00 | 2.50 | 987.50 | MULTIPLE TELEPHONE CONFERENCES WITH ATTY FOR FINRA RE FINRA'S POSITION ON EXPUNGEMENT OF QUICK & REILLY COMPLAINT & RE CRIMINAL DISCLOSURES; CONFERENCE WITH ATTY TF RE SAME; E-MAIL CORRESPONDENCE TO CLIENT RE STATUS & REQUESTING HER TO CONTACT FORMER ATTORNEY; REVIEW STIPULATION TO EXTEND PETITION RESPONSE DEADLINE; MULTIPLE E-MAILS WITH OPPOSING COUNSEL & FINRA'S LOCAL COUNSEL RE ALL OF ABOVE; INSTRUCT PARALEGAL DG RE PETITION LITIGATION SCHEDULING. | ARCH |
| 1420.02 | 09/10/2007 | 19 | A | 1 | 395.00 | 0.75 | 296.25 | EMAILS WITH JONAH TOLENO REGARDING EXPUNGEMENT | ARCH |
| 1420.02 | 09/10/2007 | 19 | A | 1 | 395.00 | 0.75 | 296.25 | PREPARE RESPONSE TO FINRA OPPOSITION TO EXPUNGEMENT | ARCH |
| 1420.02 | 09/11/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | REVIEWED, SCANNED AND FILED STIPULATION EXTENDING THE TIME FOR THE NASD TO FILE THEIR RESPONSE TO OUR PETITION. | ARCH |
| 1420.02 | 09/11/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | CORRESPONDENCES WITH OPPOSING COUNSEL, ATTY TF & CLIENT RE FINALIZATION OF STIPULATION TO EXTEND FINRA'S PETITION RESPONSE DEADLINE. | ARCH |
| 1420.02 | 09/13/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | SEARCHED FOR CASES IN NORTHERN DISTRICT OF CALIFORNIA AND ON WESTLAW FOR ANY SIMILAR CASES TO ASSIST WITH OUR HANDLING OF THE CASE. | ARCH |
| 1420.02 | 09/13/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | RESEARCH & REVIEW PRIOR PETITIONS IN FEDERAL COURT TO GAIN INFORMATION FOR USE AS LEVERAGE IN NEGOTIATING OUT-OF-COURT SETTLEMENT WITH FINRA RE CRIMINAL RECORDS EXPUNGEMENT ISSUE. | ARCH |
| 1420.02 | 09/19/2007 | 1 | A | 20 | 0.220 | | 11.44 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 09/19/2007 | 1 | A | 32 | 0.030 | | 0.15 | SCANNING EXPENSE | ARCH |
| 1420.02 | 09/20/2007 | 16 | A | 1 | 165.00 | 0.50 | 82.50 | CONFERENCE WITH JONAH TOLENO REGARDING HER DISCUSSION WITH FINRA AND HOW WE WILL PROCEED. | ARCH |
| 1420.02 | 09/20/2007 | 18 | A | 3 | 395.00 | 1.00 | 395.00 | MULTIPLE TELEPHONE CONFERENCES WITH DENISE'S FORMER ATTORNEY RE OBTAINING ADDITIONAL COURT EXPUNGEMENT ORDER AND WITH FINRA COUNSEL RE PETITION TO CONFIRM; CONFERENCES WITH ATTY EJS & PARALEGAL DG RE PROCEDURE FOR CONFIRMING PORTIONS OF ARBITRATION AWARD; UPDATE CLIENT RE SAME. | ARCH |
| 1420.02 | 09/21/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING NEW DIRECTION IN THE CASE. | ARCH |
| 1420.02 | 09/21/2007 | 16 | A | 3 | 165.00 | 0.50 | 82.50 | RESEARCHED MOTION PROCEDURE LOCAL RULES AND JUDGE WILKEN'S RULES TO PLAN ON MOTION FILING. | ARCH |
| 1420.02 | 09/21/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | TELEPHONE CONFERENCE WITH ATTY S. GILL RE DETAILS OF STIPULATION FOR ENTRY OF JUDGMENT. | ARCH |
| 1420.02 | 09/24/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | TELEPHONE CONFERENCE WITH FINRA ATTY S. GILL RE DEFENDANT WP'S ROLE IN EXECUTING STIPULATION FOR ENTRY OF JUDGMENT AS TO EXPUNGEMENT. | ARCH |
| 1420.02 | 09/25/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING WHITE PACIFIC'S ANSWER TO PETITION. ALSO, REVIEWED, SCANNED AND FILED ANSWER. | ARCH |
| 1420.02 | 09/25/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW WP'S ANSWER TO PETITION; MULTIPLE E-MAILS WITH CLIENT RE NEXT STEPS; E-MAILS WITH ATTY EJS & FINRA'S ATTY RE STIPULATION FOR ENTRY OF JUDGMENT BASED ON WP'S ANSWER. | ARCH |

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|--|-------|
| **Client ID 1420.02 REED/DENISE** | | | | | | | | | |
| 1420.02 | 09/26/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH TO DISCUSS THE PROPOSED STIPULATION TO VACATE THE BRIEFING SCHEDULE. | ARCH |
| 1420.02 | 09/26/2007 | 18 | A | 3 | 395.00 | 1.00 | 395.00 | MULTIPLE CORRESPONDENCES WITH FINRA ATTORNEYS RE MOTION & SUPPORTING STIPULATION TO VACATE ADR SUBMISSION DEADLINE; REVIEW STIPULATION & MOTION FOR ACCURACY OF REPRESENTATIONS AS TO DENISE REED'S AGREEMENT WITH FINRA ON EXPUNGEMENT; CORRESPONDENCE WITH CLIENT RE INFORMATION REQUIRED BY TN ATTORNEYS FOR OBTAINING EXPUNGEMENT ORDER FROM COURT. | ARCH |
| 1420.02 | 09/27/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | REVIEWED, SCANNED AND FILED STIPULATION AND MOTION TO VACATE ADR SCHEDULE. | ARCH |
| 1420.02 | 09/27/2007 | 1 | A | 3 | 495.00 | 0.75 | 371.25 | REVIEW EMAILS FROM JT RE: STRIP W/ NASD; T/C JT RE: SAME; | ARCH |
| 1420.02 | 09/27/2007 | 18 | A | 3 | 395.00 | 1.50 | 592.50 | T/C WITH CLIENT'S CRIMINAL ATTYS IN TN RE ADD'L INFO REQUIRED FOR OBTAINING EXPUNGEMENT ORDER; REVIEW FILED STIPULATION & MOTION BY FINRA TO VACATE ADR REQUIREMENT; CORRESPOND WITH FINRA ATTORNEYS RE SUBJECT MATTER JURISDICTION OBJECTION BY WP; REVIEW & REVISE DRAFT STIPULATION FOR ENTRY OF JUDGMENT AS TO EXPUNGEMENT AND SEND SAME TO ATTY EJS FOR INPUT; UPDATE CLIENT RE ALL OF THE ABOVE | ARCH |
| 1420.02 | 09/28/2007 | 1 | A | 3 | 495.00 | 2.00 | 990.00 | REVIEW AND REVISE STIPULATION WITH FINRA; T/C WITH FINRA REPRESENTATIVE RE: STIPULATION SIGNED BY THE COURT; | ARCH |
| 1420.02 | 09/28/2007 | 3 | A | 3 | 165.00 | 0.25 | 41.25 | RESEARCH NORTHERN DISTRICT LOCAL RULES FOR FILING STIPULATION | ARCH |
| 1420.02 | 09/28/2007 | 18 | A | 3 | 395.00 | 2.75 | 1086.25 | REVIEW CHANGES TO STIPULATION BY ATTY EJS IN PREP FOR T/C WITH FINRA ATTORNEYS; T/C WITH FINRA ATTORNEYS RE STIP & SUBJECT MATTER JURISDICTION; REVISE STIPULATION PURSUANT TO T/C & SEND TO FINRA FOR REVIEW; SEND FOLLOW UP CORRESPONDENCE TO CLIENT & ATTY EJS RE NEW REVISIONS TO STIPULATION; CONFERENCE WITH PARALEGAL DG RE ENTERING DEFAULT AGAINST RESPONDENT R. PANELLI; REVIEW & FINALIZE REQUEST FOR ENTRY OF DEFAULT. | ARCH |
| 1420.02 | 09/28/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH RELATED TO THE FILING OF THE ENTRY OF DEFAULT AND STIPULATION PROCEDURE IN THE NORTHERN DISTRICT. | ARCH |
| 1420.02 | 09/28/2007 | 16 | A | 3 | 165.00 | 1.00 | 165.00 | DRAFTED REQUEST FOR ENTRY OF DEFAULT DOCUMENT AND PROOF OF SERVICE. | ARCH |
| 1420.02 | 09/28/2007 | 16 | A | 3 | 165.00 | 0.75 | 123.75 | FINALIZED DOCUMENTS FOR ENTRY OF DEFAULT AND E-FILED. | ARCH |
| 1420.02 | 10/01/2007 | 1 | A | 22 | | | 23.77 | OVERNIGHT DELIVERY - OVERNITE EXPRESS PARCEL SERVICE | ARCH |
| 1420.02 | 10/02/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | REVIEWED, SCANNED AND FILED CLERKS ENTRY OF DEFAULT. | ARCH |
| 1420.02 | 10/02/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW REVISIONS TO STIPULATION FROM OPP COUNSEL; SEND SAME TO ATTY EJS; CORRESPOND WITH OPP COUNSEL RE SAME. | ARCH |
| 1420.02 | 10/03/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | TELEPHONE CONFERENCE WITH OPP COUNSEL RE POSSIBLY INCLUDING WP ON STIP FOR EXPUNGEMENT; CONFERENCES WITH ATTY EJS RE SAME & RE OPP COUNSEL'S CHANGES TO STIPULATION. | ARCH |
| 1420.02 | 10/04/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | REVIEW CORRESPONDENCE FROM ATTY EJS RE NOT INCLUDING WP ON EXPUNGEMENT STIPULATION & RE FINAL CHANGES TO STIP; SEND E-MAIL TO OPPOSING ATTORNEYS RE LEAVING WP OFF EXPUNGEMENT STIP & RE FINAL VERSION OF STIPULATION. | ARCH |
| 1420.02 | 10/04/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | CORRESPONDENCES WITH OPPOSING COUNSEL RE NOT INCLUDING WP ON STIPULATION; RECEIVE & REVIEW ADDITIONAL CHANGES TO STIPULATION & JUDGMENT ORDER. | ARCH |
| 1420.02 | 10/05/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW & APPROVE FINAL STIPULATION & JUDGMENT ORDER; CORRESPONDENCE WITH OPPOSING COUNSEL RE SAME; INSTRUCT STAFF RE FILING; SEND COPIES OF SAME TO CLIENT. | ARCH |
| 1420.02 | 10/05/2007 | 3 | A | 3 | 165.00 | 0.25 | 41.25 | SAVE PROPOSED ORDER AND STIPULATION CONFIRMING ARBITRATION AWARD AND CALL TO JAT RE: SAME. | ARCH |
| 1420.02 | 10/05/2007 | 1 | A | 1 | 495.00 | 0.75 | 371.25 | FINAL REVIEW OF STIPULATION WITH FINRA; MAKE COMMENTS AND FORWARD TO JT | ARCH |
| 1420.02 | 10/10/2007 | 16 | A | 3 | 165.00 | 0.25 | 41.25 | REVIEWED, SCANNED AND FILED SEVERAL SIGNED | ARCH |

Date: 12/05/2007

**Detail Transaction File List**
SHUSTAK & PARTNERS, PC

Page: 8

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|---|-------|

**Client ID 1420.02 REED/DENISE**

| Client | Trans Date | Tmkr | H P | Tcd | Rate | Hours to Bill | Amount | Description | Ref # |
|--------|-----------|------|-----|-----|------|---------------|--------|-------------|-------|
| | | | | | | | | ORDERS FROM THE COURT. | |
| 1420.02 | 10/10/2007 | 16 | A | 1 | 165.00 | 0.25 | 41.25 | CONFERENCE WITH JONAH REGARDING THE JUDGMENT OF THE COURT RELATING TO OUR STIPULATION. | ARCH |
| 1420.02 | 10/10/2007 | 18 | A | 3 | 395.00 | 0.75 | 296.25 | REVIEW MULTIPLE FILINGS FROM DISTRICT COURT APPROVING STIPULATION & ENTRY OF JUDGMENT RE PETITION FOR EXPUNGEMENT; CONFERENCE WITH PARALEGAL DG RE SAME; SEND E-MAIL TO CLIENT EXPLAINING FILINGS & ATTACHING ALL FILINGS. | ARCH |
| 1420.02 | 10/11/2007 | 18 | A | 3 | 395.00 | 0.25 | 98.75 | CONFERENCES WITH ATTY EJS & PARALEGAL DG RE PROCEDURE FOR REQUESTING AWARD OF ATTORNEYS' FEES IN DISTRICT COURT FOR PETITION & RELATED ARBITRATION AWARD ENFORCEMENT WORK. | ARCH |
| 1420.02 | 10/17/2007 | 16 | A | 4 | 165.00 | 0.25 | 41.25 | TELEPHONE CONFERENCE WITH JONAH REGARDING LETTER FROM FINRA TO DENISE REED/FRANK HO. | ARCH |
| 1420.02 | 10/17/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | REVIEW DISCLOSURE LETTER FROM CLIENT'S EMPLOYER; MULTIPLE E-MAILS WITH CLIENT & ATTY TF RE RESPONDING TO DISCLOSURE LETTER & RE CONTACTING FINRA RE SAME. | ARCH |
| 1420.02 | 10/17/2007 | 19 | A | 1 | 425.00 | 0.50 | 212.50 | RECEIVE AND REVIEW DISCLOSURE LETTER DETAIL; EMAILS WITH JONAH TOLENO AND CLIENT RE SAME | ARCH |
| 1420.02 | 10/17/2007 | 19 | A | 1 | 425.00 | 0.50 | 212.50 | EMAILS WITH SARAH GILL REGARDING RESPONSE TO DISCLOSURE LETTER DETAIL | ARCH |
| 1420.02 | 10/29/2007 | 18 | A | 3 | 395.00 | 0.75 | 296.25 | MULTIPLE E-MAIL & TELEPHONE CORRESPONDENCES WITH OPP COUNSEL, CLIENT, CLIENT'S SUPERVISOR, ATTY TF, AND CLIENT'S TN COUNSEL'S OFFICE RE STATUS OF ASSAULT EXPUNGEMENT AND STRATEGY FOR RESPONDING TO FINRA'S DISCLOSURE LETTER. | ARCH |
| 1420.02 | 10/31/2007 | 1 | A | 19 | | | 9.75 | THOMSON WEST - LEGAL RESEARCH (SEPTEMBER 2007) | ARCH |
| 1420.02 | 10/31/2007 | 1 | A | 19 | | | 209.00 | THOMSON WEST - LEGAL RESEARCH (SEPTEMBER 2007) | ARCH |
| 1420.02 | 11/01/2007 | 18 | A | 3 | 395.00 | 0.50 | 197.50 | FOLLOW UP TELEPHONE CALL TO TN COUNSEL RE STATUS OF EXPUNGEMENT ORDER REQUEST; BEGIN DRAFT OF APPLICATION FOR ATTYS FEES RE PETITION TO CONFIRM. | ARCH |
| 1420.02 | 11/30/2007 | 1 | A | 20 | 0.220 | | 0.22 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 11/30/2007 | 1 | A | 20 | 0.220 | | 1.76 | PHOTOCOPYING/ PRINTING EXPENSE | ARCH |
| 1420.02 | 12/03/2007 | 18 | P | 3 | 395.00 | 2.50 | 987.50 | REVISE MOTION FOR ATTORNEYS' FEES & SUPPORTING DOCUMENTS. | 168 |
| 1420.02 | 12/04/2007 | 18 | P | 3 | 395.00 | 2.75 | 1086.25 | REVISE & FINALIZE MOTION FOR ATTYS FEES & SUPPORTING DOCUMENTS/EXHIBITS; INSTRUCT PARALEGAL DG RE FILING OF SAME. | 169 |
| 1420.02 | 12/04/2007 | 16 | P | 3 | 165.00 | 0.50 | 82.50 | REVIEWED COURT RULES AND JUDGES CALENDAR TO GET HEARING DATE FOR MOTION FOR ATTORNEYS FEES. | 170 |
| 1420.02 | 12/04/2007 | 16 | P | 3 | 165.00 | 1.00 | 165.00 | FORMATTING AND MAKING FINAL EDITS TO MOTION FOR ATTORNEYS FEES AND ALL SUPPORTING DOCUMENTS. | 171 |
| 1420.02 | 12/04/2007 | 16 | P | 3 | 165.00 | 0.50 | 82.50 | FILING MOTION FOR ATTORNEYS' FEES AND ALL SUPPORTING DOCUMENTS VIA EFILE AND INCLUDING SEPARATE EMAIL TO THE JUDGE WITH THE PROPOSED ORDER. | 172 |

| | | | | | | Billable | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Total for Client ID 1420.02** | | | | | Billable | 126.75 | 42140.54 | REED/DENISE POST AWARD MATTERS | |

**GRAND TOTALS**

| | | Billable | 126.75 | 42140.54 |
|---|---|----------|--------|----------|